LAWRENCE G. HALLY v. HOSPITAL OF ST. RAPHAEL ET AL.

HOUSE, C. J., COTTER, RYAN, SHAPIRO and LOISELLE, Js.

Argued January 6—decided February 2, 1972

*Stephen I. Traub,* for the appellant (plaintiff).

*Lawrence W. Iannotti,* for the appellee (named defendant).

*Francis A. Smith, Jr.,* with whom was *Edward M. Sheehy,* for the appellee (defendant Calley & Currier, Inc.).

COTTER, J.   The plaintiff sued for damages he claimed to have sustained as a proximate result of the negligence and breach of warranties of the defendants Hospital of St. Raphael and Calley & Currier, Inc.   In addition, a claim in strict tort liability was alleged against Calley & Currier, Inc.   The plaintiff's action was brought in five counts.   The first two counts were brought against the hospital for corporate neglect and breach of an implied warranty in the sale of crutches by the hospital to the plaintiff. The trial court directed a verdict in favor of the defendant hospital on the first count, from which an appeal has not been pursued.   The three remaining counts against the defendant Calley & Currier, Inc., are, seriatim, in negligence, breach of implied warranty and strict tort liability.   The court directed a verdict in favor of that defendant on the fourth count, alleging breach of an implied warranty, from which an appeal has not been pursued.   The jury returned a verdict for both defendants on all counts and the court denied a motion to set aside the ver-

dict. The plaintiff appeals from the judgment rendered on the verdict, assigning error in the denial of his motion to set aside the verdict because it was not supported by the evidence, in refusing to charge as requested and in charging that contributory negligence was a defense to the plaintiff's claims of breach of implied warranty as to the hospital.

The defendant Hospital of St. Raphael denied the allegations that an alleged defective crutch was sold by it to the plaintiff; that there was a breach of an implied warranty; that the plaintiff was injured "as a direct and proximate result of the breach of warranty" alleged; and that the plaintiff gave due notice to the hospital of the alleged breach of warranty. The hospital further, in addition to defending on those issues, alleged, by way of special defense, that the plaintiff was negligent in several respects and that his injuries and damages were proximately caused by his own negligence. A special defense of charitable immunity was ruled out of the case by the trial court and that ruling does not concern us.

The defendant Calley & Currier, Inc., denied the allegations: that the plaintiff's injuries were the direct and proximate result of its negligence; that the plaintiff gave due notice to the defendant of its alleged breach of warranty; and that it was strictly liable in damages to the plaintiff. In addition, that defendant pleaded special defenses of contributory negligence and assumption of risk, claiming that the plaintiff assumed the risk of his alleged injuries and damages because of his failure to check and inspect the crutches to make sure they were adjusted to the proper height and that the wing nut had been tightly screwed on before using.

The plaintiff offered evidence to prove the follow-

ing facts: He entered the Hospital of St. Raphael on July 10, 1965, for surgery on his right knee. After the surgery his doctor ordered crutches while he was convalescing at the hospital. On July 15 he was provided with crutches by a hospital orderly. They were sold to him by the hospital for his use while in the hospital. When he used the crutches for the first time at the hospital the handle of one crutch collapsed, causing him to fall and sustain injuries necessitating further surgery. The fall was caused by the collapse of the handle of one of the crutches when a bolt and a wing nut fixing the handle to the crutch parted. The plaintiff also offered evidence to show that the crutches were defective when sold to him by the defendant hospital, and were defectively and negligently designed and manufactured by the defendant Calley & Currier, Inc.

There was evidence which the defendant hospital offered, or on which it relied, to prove the following facts: The plaintiff, on the advice of his physician, entered the hospital for an operation on his right knee. Several days after the operation and while the plaintiff was using a wheelchair to get about, crutches were ordered for him which were manufactured by Calley & Currier, Inc., and were provided by the hospital as part of its service to him. The crutches were given to him by an orderly, who demonstrated their use. Following the alleged incident, the crutches were taken from the plaintiff and he did not see them again for about an hour. They were returned to him and he was given instruction in their proper use. He noticed, when they were returned to him, that the nut and bolt in the affected crutch had been replaced. He never saw the original nut and bolt again. Thereafter, whenever necessary, he used the crutches without difficulty.

In the course of the trial, the plaintiff offered
in evidence the hospital record for his first admission during which the accident allegedly occurred.
He also offered the reports of his treating physician,
one Maiorano, who had since died. The hospital records stated that the plaintiff had twisted his knee
getting out of bed and had had an uneventful post-operative course but it said nothing of an accident
involving crutches. Maiorano's report of September
30, 1965, stated that the plaintiff had "slipped on
his crutches" while at the hospital. In his earlier
report of August 2, 1965, however, he made no mention of such an event and, with reference to the
plaintiff's operation and recuperation, said "there
was no evidence of any untoward results." The
plaintiff offered Frederick J. Lorinser, Jr., to testify to defective design and manufacture of the nut
and bolt on the crutch, based on a visual inspection
made by him only a month or so before the trial.
H. Thomas Urie, the president of Calley & Currier,
Inc., testified relative to the safety of the crutches
and the method of manufacture and testing, in contradiction to the claims of the plaintiff in this regard. The hospital offered evidence of contributory
negligence by the plaintiff; it denied that it was in
the business of selling crutches, that there had been
a sale in this instance, that there had been timely
and reasonable notice given to it and that the
crutches were defective.

There was evidence which the defendant Calley &
Currier, Inc., offered, or on which it relied, to prove
the following: The plaintiff was admitted to the
defendant hospital for an operation on his right
knee, which was performed on Monday. The following Thursday, for a charge of $5.75 or $6, the hospital supplied the plaintiff with crutches which were

manufactured by Calley & Currier, Inc., in December, 1964. The handles on the crutches given to the plaintiff were at the top level or top holes. The defendant Calley & Currier, Inc., made no direct sales of any crutches to the hospital, nor did it ever send it a copy of instructions for the assembly of the crutches. The crutches supplied to the plaintiff in the hospital were not in the same condition as when they were sent out from the plant of the manufacturer.

After the crutch collapsed, the plaintiff gave the crutches to someone who took them away for about an hour. When they were returned, the handles were adjusted in the plaintiff's presence to the second level or hole; all the nuts were tightened up; and a new bolt and wing nut had been placed in the handle. The plaintiff never again saw the original bolt and wing nut which were in the crutch at the time of his fall. The plaintiff was then given instructions "for 10 to 15 minutes" on how to get in and out of the wheelchair, in and out of bed and how to use the crutches. Since his fall the plaintiff has been able to use the crutches without any difficulty and has never had any occasion to make any adjustments on the crutches.

Extensive strength tests are performed on Calley & Currier crutches at the University of New Hampshire and during such tests none of the bolts have ever stripped. The size of the handle bolt makes no difference in the strength of the crutch. During the various stages of the manufacturing process, employees of Calley & Currier, Inc., check to make sure that the wing nuts are properly tightened.

Mr. Lorinser, called by the plaintiff as an expert safety witness, rendered an opinion concerning the crutches based on only a visual examination of the

crutches, a reading of the deposition of the plaintiff and consultation with his partner. He first examined the crutches in April, 1970. He made no scientific tests on the bolt. He did not know whether the wing nut and bolt of the crutch he examined in April, 1970, were the same parts of the crutch involved in the plaintiff's fall in July, 1965. His opinion was that the impressions or marks at the top holes of the crutch indicated that the wing nut had been placed improperly when it was used on the top holes or notches.

It is apparent, from this limited recitation of some of the evidence which was relied on by the parties, that the essential and material allegations of the plaintiff's complaint were strenuously and hotly contested; and that the defendants vigorously disputed the testimony of the plaintiff's witnesses, in many respects, by virtue of cross-examination of those witnesses. In a civil action the general burden of proof rests on the plaintiff, and when an answer denies several paragraphs of the complaint the burden of proving each separate, material issue of fact that was raised is thrown on the plaintiff; it is only in a rare case, for instance, that, as a matter of law, it can be said that the jury are compelled to accept as true the plaintiff's evidence supporting the essential allegations of his complaint, even if it appears such evidence might be uncontradicted. *Silva* v. *Hartford,* 141 Conn. 126, 127–28, 104 A.2d 210. The jury were not obliged, for example, to accept the ultimate opinion of the expert witnesses who testified since the jury might reject the opinion if they do not find the expert a credible witness or because the opinion was based on subordinate facts which they do not find proven. *National Folding Box Co.* v. *New Haven,* 146 Conn. 578, 586, 153 A.2d 420; *Van Detti*

v. *Parsons Bros., Inc.,* 146 Conn. 282, 286, 150 A.2d 200; 31 Am. Jur. 2d, Expert and Opinion Evidence, § 183.

It is the province of the jury to weigh the evidence and determine the credibility and the effect of testimony; and we must decide the question whether on the evidence presented, the jury could have fairly reached their verdict for the defendants. *Hanauer* v. *Coscia,* 157 Conn. 49, 53, 244 A.2d 611. The jury could reasonably have found in accordance with the verdict as rendered, giving the evidence the most favorable construction in support of the verdict to which it is reasonably entitled; the verdict, therefore, could not be set aside as being against the evidence and should stand. *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 458, 242 A.2d 708. The verdict, which involved issues of fact, was a result reasonably reached on a permissible view of the evidence. The court was not in error in refusing to set aside the verdict.

The plaintiff has assigned error in the court's refusal to charge as requested. An instruction that the hospital, to the extent it participates in the manufacturing process by assembling or finishing the product, is bound to conform to a certain standard was unwarranted since the request was inconsistent with the evidence and with the claims of proof of the plaintiff that the crutches were fully assembled when they left the factory of the defendant manufacturer. The correctness of the charge is tested by the claims of proof as they appear in the finding. Practice Book § 635; *Southington* v. *Francis,* 159 Conn. 64, 68, 266 A.2d 387.

The other requests to charge on which claimed error is predicated concern the liability of the manufacturer. Three of these relate to the issue of unsafe

design. The court referred to the particular count
and paragraph of the plaintiff's complaint which
alleged that Calley & Currier, Inc., was negligent in
various respects because of the design of the prod-
uct and it reminded the jury of the testimony of the
plaintiff and the experts who testified concerning
the design, manufacture and assembly of the crutch
and its various parts, particularly the handle. In-
structions were given by the court on the specific
rules of negligence to be applied to the sale and
delivery of a product imminently dangerous to the
life and limb of another. Extensive, intricate, ab-
stract requests to charge in the language of a law
review article, as submitted by the plaintiff, do not
necessarily follow our rule that the jury be given
an understandable criterion of the legal principles
involved and their application to the facts and the
claims of the parties, because the charge as a whole
must be considered from the standpoint of its effect
on the jury in giving them practical guidance in
reaching a correct verdict. *Berniere* v. *Kripps,* 157
Conn. 356, 358, 254 A.2d 496; *Phoenix Mutual Life
Ins. Co.* v. *Brenckman,* 148 Conn. 391, 398, 171 A.2d
194; *Kowal* v. *Archibald,* 148 Conn. 125, 129–30, 167
A.2d 859; *DeCarufel* v. *Colonial Trust Co.,* 143
Conn. 18, 20, 118 A.2d 798.

The adequacy of a charge is not to be tested by
technical refinements applied to it on a deliberate
and studied reading of it in a printed record; but it
must be tested by the probable effect produced by
its delivery on the minds of the jury. *Jackson* v.
*Waller,* 126 Conn. 294, 309, 10 A.2d 763. The re-
maining request to charge in this category relative
to unsafe design was improperly composed and the
refusal to give it was not error. *Penna* v. *Esposito,*
154 Conn. 212, 214, 224 A.2d 536.

The court charged in effect that one who sells or delivers a product which he knows or should know to be imminently dangerous to the life or limb of another is liable to one injured irrespective of whether some of the component parts of the product might have been bought from another party. The charge read as a whole was adapted to the issue raised by the plaintiff in his request to charge; it was sufficient for the guidance of the jury and the court was not required to adopt the precise language of the plaintiff's request. *Hanauer* v. *Coscia,* supra, 55.

Two other requested instructions concerned a failure of the defendant Calley & Currier, Inc., to inspect or test the product and a failure to warn the user of an unsafe wing nut. To have given the instructions would have been erroneous since they would have injected issues not created by the specifications in the pleadings and they were unsupported by the claims of proof. *Scalora* v. *Shaughnessy,* 151 Conn. 252, 258, 196 A.2d 763; *Faiman* v. *James D. Kauffman, Inc.,* 140 Conn. 395, 396, 100 A.2d 842.

Finally, discussing requests to charge, the plaintiff requested an instruction that a haphazard inspection by a purchaser of a product with an undiscovered defect would in effect not constitute assumption of risk. The finding, however, does not support an instruction of this nature; rather, it appears that the plaintiff made no inspection or examination of the crutches before using them. The court correctly charged the jury concerning the doctrine of the assumption of risk to which no exception was taken or error assigned. *Cummings* v. *General Motors Corporation,* 146 Conn. 443, 451, 151 A.2d 884.

The plaintiff assigns error in that portion of the

charge in which the court instructed the jury that contributory negligence was a defense to the plaintiff's claim of breach of implied warranty against the defendant hospital. The verdict was a general one. We need not, therefore, consider the question whether contributory negligence is a defense to an action for the breach of an implied warranty since there was evidence sufficient to support the verdict for the defendants. *Angier* v. *Barton,* 160 Conn. 204, 210–11, 276 A.2d 782.

The defendant hospital denied the material allegations of the plaintiff's second count reciting the breach of an implied warranty. The defendant hospital denied that it sold the crutches to the plaintiff; that the plaintiff's injuries were the proximate result of the use of a defective crutch; that the hospital was engaged in assembling and the sale of crutches to its patients; that there had been a warranty which was breached; that as a proximate result of the alleged breach of warranty by the hospital the plaintiff was injured when the crutch collapsed; and that the plaintiff gave due notice to the hospital of the alleged breach of warranty. The precise ground or grounds on which the verdict rested is not made clear and no interrogatories were submitted to the jury. Practice Book § 247; *Ziman* v. *Whitley,* 110 Conn. 108, 113, 147 A. 370; *Ford* v. *H. W. Dubiskie & Co.,* 105 Conn. 572, 582, 136 A. 560.

No error is assigned in the court's instructions concerning the issues raised by the defendant hospital's denial of the above allegations as enumerated herein. We may assume that the jury were, except for the specific assignment of errors attacking the charge discussed above, properly instructed on the principles of law and that they followed those principles. Since the verdict was a general verdict, all

the issues of fact are presumed to have been found in favor of the defendants. *Kelly* v. *Bliss,* 160 Conn. 128, 131, 273 A.2d 873; *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698; *Dillon* v. *Tarantino,* 149 Conn. 377, 380, 179 A.2d 833; 53 Am. Jur., Trial, § 1005. It is unnecessary to decide whether the court erred in charging as it did on contributory negligence in the plaintiff's case against the hospital. Regardless of possible error in that regard, when, as in the case at bar, the parties are at issue on two or more distinct defenses, a general verdict will be sustained if it can be supported on the basis of one of them. *Angier* v. *Barton,* supra; *Kelly* v. *Bliss,* supra; *Levett* v. *Etkind,* 158 Conn. 567, 577, 265 A.2d 70; *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 453, 254 A.2d 907; *Gennallo* v. *Mazzacane,* 144 Conn. 686, 689, 137 A.2d 534.

There is no error.

In this opinion the other judges concurred.