KARL ECKSTRAND, JR. *v.* UNION CARBIDE CORPORATION
ET AL.

HOUSE, C. J., LOISELLE, MACDONALD, LONGO and BARBER, JS.

Argued May 7—decision released August 12, 1975

*Noel R. Newman,* with whom, on the brief, was *Edgar W. Krentzman,* for the appellant (plaintiff).

*Ronald D. Williams,* with whom was *Robert J. Cooney,* for the appellee (named defendant).

*Gregory C. Willis,* with whom, on the brief, was *Frederick W. Christie,* for the appellee (defendant Presto Hartford, Inc.).

LOISELLE, J. The plaintiff instituted this action against Union Carbide Corporation, Presto Hartford, Inc., and his employer. The action against

his employer was withdrawn prior to trial. The action against the two remaining defendants was brought in three counts against each, claiming negligence, breach of warranty and strict liability. The counts alleging breach of warranty and strict liability were withdrawn by the plaintiff after the close of the evidence and before summation to the jury. The jury returned a verdict for the defendants, and the plaintiff has appealed from the judgment rendered upon the verdict.

The plaintiff's claimed errors all relate to the court's refusal to charge as requested or to the court's having charged as it did.[1] The correctness of the charge is tested by the parties' claims of proof as they appear in the finding. Practice Book § 635; *Bell* v. *Bihary,* 168 Conn. 269, 362 A.2d 963; *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 586, 356 A.2d 873; *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 359, 294 A.2d 305.

The plaintiff claimed to have proved the following facts: On August 19, 1968, the plaintiff was using an apparatus attached to acetylene and oxygen tanks to cut steel on the body of his truck. The apparatus and tanks were owned by the plaintiff's employer and were being used, after working hours, on the employer's premises. The plaintiff had had some experience using an acetylene tank and torch prior to this date. He had carried the acetylene tank, which was almost full, and had dragged the oxygen tank to the driveway which had

---

[1] The plaintiff's assignments of error addressed to one of the court's rulings on evidence and one of its findings have not been briefed and are therefore considered to have been abandoned. *State* v. *Lally,* 167 Conn. 601, 605, 356 A.2d 897.

a hard gravelly surface. The plaintiff attached the hoses and regulators to the upright tanks and started cutting steel on his truck which was ten to fifteen feet away from the tanks. Other trucks, his employer's office and a residence were within the area. While he was cutting he felt heat at the back of his legs and discovered his trousers were on fire; he jumped off the truck and started rolling on the grass. A neighbor wrapped him in a blanket, extinguished the flame on his trousers, and left to call the fire department. The plaintiff then got up and saw the acetylene tank lying on its side with a cone-shaped flame shooting out of its base towards the back of his truck. The wooden bed of the rear of the truck was on fire. He succeeded in putting out the fire on the truck with dirt and sand. Then, as he was throwing dirt on the flame coming out of the tank, a second blast of flame hit the back of his legs. The acetylene tank has two fusible plugs at the base of the tank and two at the top. The plugs melt at a temperature between 208 and 220 degrees to release the gas, thereby reducing the pressure in the tank. There was nothing on the tank cylinder to warn of the presence of the plugs or of their locations. A decal on the tank read: "Acetylene Gas. Close valve when empty, close valve when not in use. Flammable." The cause of the fire was as follows: A slow leak of gas developed in one of the fusible plugs at the base of the tank. The leaking gas was ignited by a spark from the cutting torch and the resulting flame melted the plug. The thrust of the escaping gas knocked the tank over and resulted in the first burst of flame which hit the plaintiff's trousers. The resulting heat at the base of the tank melted the second plug, and the gas escaping from that opening ignited and

resulted in the second blast of flame which engulfed the plaintiff. The emissions from the two plugs went in different directions.

The defendants claimed to have proved the following facts: The plaintiff was not authorized to return to the premises of his employer after working hours nor was he authorized to use the acetylene equipment. A set of instructions for the use of the tanks and hoses was kept in the office of the employer. Acetylene gas emits a very bad and very strong odor which is detected immediately. When the plaintiff took the acetylene tank out of the closed garage where it was stored, he did not smell any odor. He noticed the red decal on the tank but did not read the small print which stated "flammable, close valve when not in use." He had used these tanks previously. When the plaintiff first started to cut, he was thirteen and one-half feet to eighteen and one-half feet from both tanks, which were in an upright position and not secured to anything. The maximum length of flame that could come out of the fuse plug is four to six feet. The metal slag from the cutting operation burned the hose, permitting the escape of gas which impinged on the back of the plaintiff's trousers. The fire which the plaintiff felt on the back of his legs came from the hose which was on fire. The burning hose melted the first fusible plug at the bottom of the tank. The heat that caused the plug to give way came from an external source. The sides, the footband and the base of the tanks showed evidence of scorching. The falling of the tanks caused the hoses and the torch to move toward the tanks, and the heat from the cutting tip of the torch or from the hose melted the fusible plug. The burning of the tip of the torch was caused by the

acetylene fire and not by a fire on the back of the truck. The four plugs on this type of tank have been authorized by the bureau of explosives of the Association of American Railroads since 1922.

More facts with greater detail were offered by all of the parties but the above recited facts are sufficient to discuss the claimed errors in the charge.

The plaintiff claims that the court was in error in not charging eighteen paragraphs of his request to charge that cover about eight pages of the record. These requests relate to the defendants' duty to warn, the defendants' duty to inspect, proximate cause, contributory negligence, and assumption of the risk.

The plaintiff submitted several written requests to charge in different form on the issue of the duty of the defendants to warn users and potential users of the hazards involved in the use of acetylene. The court was under no duty to consider these requests to charge as this was clearly improper and in violation of Practice Book § 252 which states that "[a] principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper." That aside, the court did charge extensively regarding the duty to warn on the part of a manufacturer or distributor. The plaintiff asserts that the court's instructions were inadequate because they failed to make sufficient reference to the evidence and claims of proof and therefore failed to provide the jury with adequate guidance. In determining whether a charge to the jury is sufficient, the charge is to be read as a whole, and the instructions claimed as errors read in that context. *Hally*

v. *Hospital of St. Raphael,* 162 Conn. 352, 360, 294 A.2d 305; *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 425–26, 216 A.2d 818. The reference to the evidence involved should be such as to enable the jury to apply it to the law stated. *Woodward* v. *Waterbury,* 113 Conn. 457, 462–63, 155 A. 825. The court's reference to the evidence was not elaborate but was sufficient to guide the jury in relation to the principles of law stated. *Danehy* v. *Metz,* 140 Conn. 376, 379, 100 A.2d 843; *Antz* v. *Coppolo,* 137 Conn. 69, 72, 75 A.2d 36.

The plaintiff claims that the court was in error in not adopting the request to charge on the issue of the duty to inspect placed upon a manufacturer and distributor. The request assumed the truth of facts which were disputed, and, therefore, was improper. Practice Book § 252. See *Cook* v. *Miller,* 103 Conn. 267, 275, 130 A. 571. The request took the position that regular replacement of plugs was required in addition to routine inspection. This point was in dispute, and it was error for these facts to be included in its request as admitted facts. See *Cook* v. *Miller,* supra; *Skladzien* v. *Sutherland Building & Construction Co.,* 101 Conn. 340, 343, 125 A. 614. The court did charge on the duty and obligation of a manufacturer upon the subsequent servicing of the tank to repair and service it adequately as a reasonably prudent manufacturer would do. The court also charged: "[Y]ou will determine whether the manufacturer used reasonable care and, in a case of this type and this type of gas, it would require the exercise of the closest attention." The instruction was concise but adequate guidance on how to apply the law to the facts in the case. The plaintiff's request to charge was

properly refused, and the court, in its own language, adequately and sufficiently charged the jury on the issue presented. *Acampora* v. *Ledewitz,* 159 Conn. 377, 383, 269 A.2d 288.

The plaintiff assigns error in the court's refusal to adopt his request to charge on proximate cause. He concedes that the court's instruction on proximate cause was correct but claims that the court did not distinguish between the two fires, as requested, that is, each fire should have been considered separately as to the issue of proximate cause. It is noted that the complaint makes no such distinction, and, indeed, this is the only request which indicates two distinct fires. Moreover, the offers of proof do not indicate two distinct fires but a fire which became intensified when a second plug ignited. At any rate, the charge on proximate cause was accurate and complete and taken as a whole fairly presented the issue to the jury even if they could have found that any liability of the defendants would not have arisen until the fire resulting from the melting of the second plug struck the plaintiff.

The remaining assignments of error which go to the court's charge relating to the special defenses of contributory negligence and assumption of risk have been examined. No useful purpose would be served by discussing in detail these two issues. The instructions were brief and succinct and covered the issues presented by the requests to charge and correctly charged the jury on those issues although not in the language of the requests. In any event, the verdict was a general one, and no interrogatories were presented to the jury. The plaintiff has failed to demonstrate any error in the court's charge to

the jury on the complaint charging negligence as pleaded by the plaintiff. As the verdict was a general one, the judgment must stand. *Mancini* v. *Bureau of Public Works,* 167 Conn. 189, 201, 355 A.2d 32; *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 363, 294 A.2d 305; *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 453, 254 A.2d 907; *Himmelstein* v. *General Electric Co.,* 144 Conn. 433, 436, 133 A.2d 617.

There is no error.

In this opinion the other judges concurred.