PAUL KOSKO *v.* LAWRENCE KOHLER ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued October 18—decision released December 26, 1978

*Albert R. Annunziata* and *John T. Grillo,* with whom, on the brief, was *William F. Gallagher,* for the appellant (plaintiff).

*Michael J. Dorney,* with whom, on the brief, was *Otis M. Smith,* for the appellee (defendant General Motors Corporation).

*Gerald P. Dwyer,* with whom, on the brief, was *Kevin T. Gormley,* for the appellee (defendant Dailey Chevrolet, Inc.).

PETERS, J.  The plaintiff brought an action for compensation for personal injuries and appeals from a judgment following a jury verdict for the defendants General Motors Corporation and Dailey Chevrolet, Inc.  The plaintiff, an employee in a garage, was injured in an accident involving an automobile being repaired at the garage.  His original suit named not only the defendants involved in this appeal, but also Lawrence Kohler, the owner of the automobile.  The suit against Kohler alleged negligence; it was settled during the course of the trial.  The suit against General Motors and Dailey Chevrolet alleged strict liability in tort, to which the defendants responded by claiming lack of proximate cause, and misuse and abnormal handling of the automobile.  The plaintiff on this appeal raises a number of assignments of error concerning the charge to the jury.

The pertinent facts are substantially as follows: Lawrence Kohler purchased a new 1968 Camaro with a standard four-speed transmission from Dailey Chevrolet in January, 1968.  In September, 1968, Kohler noticed a problem with the ignition switch, which was failing to return automatically from the "start" position to the "on" position as it

should; it required a manual return to the "on" position. At the time, the car was still covered by the General Motors new parts warranty; nonetheless, Kohler did not immediately have the switch repaired because "he just didn't get around to it."

A few weeks after Kohler first noticed the ignition switch problem, he took the car to the DiLauro and Elliott garage, the plaintiff's employer, for unrelated body repair work. He testified at the trial that he did not recall telling anyone at the garage about a malfunctioning return spring. On the day of the accident, the vehicle was in the garage, ready to be painted; it was located with its front bumper two and one half to three feet from a wall. The car was in gear, the emergency brake was not set, and the key was in the ignition. Donald G. DiLauro jiggled the key in order to remove it from the ignition. Thereupon the motor engaged, the car lurched forward, and the plaintiff was pinned against the wall with resultant severe injuries, leading to the present suit.

Before we consider the assignments of error in the charge to the jury, we should note that the verdict for the defendants was a general verdict, without special interrogatories. "Since the verdict was a general verdict, all the issues of fact are presumed to have been found in favor of the defendants. . . . Regardless of possible error . . . when . . . the parties are at issue on two or more distinct defenses, a general verdict will be sustained if it can be supported on the basis of one of them." *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 362–63, 294 A.2d 305 (1972); see *Eckstrand* v. *Union Carbide Corporation,* 169 Conn. 337, 343–44, 363 A.2d 124 (1975).

The inferences that may appropriately be drawn from a general verdict are significant in this case, because the jury might well have found for the defendants on the factual basis of absence of proximate cause, regardless of alleged errors of law in the charge. The parties were at issue not only as to the question whether the ignition switch was defective within the meaning of Restatement (Second), 2 Torts § 402A,[1] but also over the causal relationship between the alleged defect and the accident. The plaintiff contends that the car would not have lurched forward with proper spring pressure, because the starter would not then have turned over. There was testimony, however, that contradicted this explanation for the occurrence of the accident. First, the spring mechanism, whether defective or not, comes into play only between the "on" and the "start" positions, and its operation could therefore not have affected the movement of the car unless DiLauro had first moved the ignition switch from "off" to "on." Kohler testified that on *no occasion* did the ignition switch ever spontaneously fall from "on" to "start." Second, automotive experts testified that, regardless of the condition of the ignition switch, any standard shift car started while in a forward gear, with the emergency brake

[1] "[Restatement (Second), 2 Torts] § 402A. SPECIAL LIABILITY OF SELLER OF PRODUCT FOR PHYSICAL HARM TO USER OR CONSUMER. (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

off, will move forward. The credibility of evidence is a question for the jury. *Dulski* v. *Appel*, 172 Conn. 187, 190, 374 A.2d 177 (1976). Acceptance by the jury of the defendants' evidence concerning proximate cause would have sufficed to support the jury's verdict for the defendants.

We shall nonetheless review the plaintiff's five assignments of error in the charge. The first arises out of the court's charge concerning the settlement with Kohler. The jury were instructed that Kohler's payment of $18,000, in consideration for the plaintiff's covenant not to sue, was an item to be considered in mitigation of the amount of damages. The plaintiff excepted, claiming that disclosure of the covenant was more prejudicial than probative, especially since mathematical adjustment of the verdict could readily be effected by the court alone. At the time of this trial, it was the generally approved practice to charge the jury precisely as did the court below. *Bonczkiewicz* v. *Merberg Wrecking Corporation*, 148 Conn. 573, 578, 172 A.2d 917 (1961); see *Tough* v. *Ives*, 162 Conn. 274, 286-87, 294 A.2d 67 (1972). Subsequently, the legislature enacted General Statutes § 52-216a (1976 Public Acts, No. 76-197), which provides that a covenant not to sue may not be read to a jury or introduced into evidence. Although the statute expresses the better policy, removing whatever possibility for prejudice may exist, the trial court cannot be required to have anticipated the will of the legislature. Furthermore, even if the charge could be deemed erroneous, the plaintiff did not sustain his burden of demonstrating that the error was prejudicial. *State* v. *Roy*, 173 Conn. 35, 44, 376 A.2d 391 (1977); *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 575, 316 A.2d 394 (1972).

We should not speculate that the jury took information about the covenant to signify that the person making the payment is responsible for the injury. That was not the tenor of the instruction, nor the tenor of the jury's inquiries about the charge, which repeatedly requested further information about the elements of strict liability as they affected the legal responsibility of Dailey Chevrolet and General Motors.

The plaintiff next contends that the charge was inconsistent and confusing regarding the requirement that the defective condition be unreasonably dangerous at the time the car left the possession of General Motors, because it created the impression that the "seeds of defect" must render the vehicle unreasonably dangerous at the time it left the factory. While the plaintiff claims that the car need not have been unreasonably dangerous when it left the factory, as long as the "seeds of defect" were present, the defendant contends that it must be established that the product was unreasonably dangerous at the time of sale. We need not reach this issue, however, since the court charged essentially as the plaintiff had requested,[2] and the charge was in fact favorable to the plaintiff's position. He can-

---

[2] The plaintiff requested the court to charge, in part, that "you must decide whether it was clear there was a substantial change made in the ignition switch mechanism from the time it was sold by General Motors to Dailey Chevrolet until the time of the accident. *Accordingly, the disputed issues are whether the ignition switch and spring mechanism therein was in a defective condition, unreasonably dangerous to any user or bystander at the time of the sale by General Motors to Dailey,* and whether that defect eventually caused the vehicle to continue to move forward striking and pinning Mr. Kosko against the cabinet and wall." (Emphasis added.)

The court in fact charged the jury as follows: "Now, if you find that the ignition switch was in a defective condition which was

not now complain of an instruction that in essence charged as he requested. *Tough* v. *Ives,* 162 Conn. 274, 287, 294 A.2d 67 (1972); see *Guglielmo* v. *Klausner Supply Co.,* 158 Conn. 308, 316–17, 259 A.2d 608 (1969).

The plaintiff's third complaint about the charge stems from the court's supplemental charge concerning the "no substantial change" requirement. On the second day of jury deliberations, in response to the jury's request for a recharge on strict liability, the court repeated part of its original instruction, including the requirement that the plaintiff prove that the automobile and ignition switch reached the injured person without substantial change in the condition in which it was sold. The plaintiff objected that the recharge on substantial change was inadequate, because it left the jury without a controlling legal standard as to what constitutes "substantial change." The recharge, however, was simply a repetition of an element of the original charge to which the plaintiff had not objected. An exception to a charge must be taken "immediately after the charge is delivered." Practice Book, 1963, § 249; *DeMichele* v. *Vermilye,* 170 Conn. 184, 186, 365 A.2d 1062 (1976). Since the plaintiff did not immediately except to the charge, we are not bound to consider this claim of error. Practice Book, 1963, § 249. It was fortuitous that

unreasonably dangerous, then the plaintiff must go further. He must prove that at the time the automobile left the possession of the defendant, the defective condition *or* the seeds of such defect were present. In other words, it must be proven in the case of the plaintiff against General Motors that at the time this automobile with the ignition switch left its possession, the ignition switch was in such a defective condition as alleged *or* the seeds of such defect were present." (Emphasis added.)

the jury requested that the charge be repeated; an unobjectionable charge does not become erroneous by repetition.

For the same reason, the plaintiff's fourth objection to the charge must fail. In its initial charge to the jury, and in the fifth supplemental charge, the court read to the jury the special defense alleging misuse, which referred to the actions of "certain agents, employees or officers of DiLauro and Elliott, Incorporated." The plaintiff claims error in the use of the term "agents," on the ground that no evidence of an agency relationship had been presented, yet the plaintiff did not object when the charge was given initially. The objection surfaced only after the recharge on the next day; the exception was therefore not timely. Practice Book, 1963, § 249; *DeMichele* v. *Vermilye*, supra. In context it must have been clear to the jury that the court was merely reciting a special defense from the answer of the defendant General Motors. The charge to the jury must be read as a whole; "individual instructions are not to be judged in artificial isolation from the overall charge." *State* v. *Roy*, 173 Conn. 35, 40, 376 A.2d 391 (1977). The test is whether the charge as a whole fairly presented the case so that no injustice was done. *Tezack* v. *Fishman & Sons, Inc.*, 173 Conn. 183, 186, 377 A.2d 272 (1977); *State* v. *Roy*, supra. Since there was no charge on the law of agency, it is improbable that the jury were misled by the inadvertent mention of the word "agents." *State* v. *Malley*, 167 Conn. 379, 355 A.2d 292 (1974).

Finally, the plaintiff assigns error to the court's failure to charge the jury in accordance with several of the plaintiff's requests to charge. An examination of the charge reveals that the court charged fully

on the issues that constituted the essence of these requests to charge. The charge "was sufficient for the guidance of the jury and the court was not required to adopt the precise language of the plaintiff's request." *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 361, 294 A.2d 305 (1972); see *Hanauer* v. *Coscia,* 157 Conn. 49, 55, 244 A.2d 611 (1968).

There is no error.

In this opinion the other judges concurred.