[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Bank of New Haven, the original plaintiff, brought this action to foreclose a mortgage on property owned by the defendant Jennith Liner and known as 435 Sheldon Court, Orange, Connecticut. Subsequent to the bringing of this action, the note and mortgage were assigned to the present plaintiffs, D.A.N. Joint Venture, a Limited Partnership. The defendant Sheldon Liner was made a party to the action since he is the husband of Jennith Liner and an occupant of the property as well as a signatory of the note. The defendants have filed a counterclaim and allege several special defenses against the Bank of New Haven, all of which seem to be based on a claim of misrepresentation.
The facts are that on June 12, 1986, the defendants Liner executed a term note in the amount of $170,000.00 payable to the Bank of New Haven. As collateral for the loan, the defendant, Jennith Liner, gave the bank a mortgage on her property at 435 Sheldon Court, Orange, Connecticut. The note required the defendants to make monthly interest payments while the principal CT Page 7599 was to be paid in full two years later on June 12, 1988. Also contained in the body of the note was a statement that the transaction was commercial in nature.
Of the proceeds of the loan, $100,000.00 went to pay off a previous 1985 commercial loan to the Bank of New Haven. A portion of the remaining proceeds went to pay off some debts incurred in the remodeling of their home. The remaining balance of $20,000.00 went toward the expenses of a Myrtle Beach, South Carolina venture. Both loans had the same basic interest rate structure. The interest on the 1985 loan being the prime rate of the Bank of New Haven plus 2 1/2 percent, while the 1988 loan interest rate was prime plus 2 percent. The defendants failed to pay the principal of the note on June 12, 1988 and have made no interest payments since April 15, 1990. While, as a term note, no specific demand for payment was necessary, nevertheless, the Bank of New Haven did, on July 19, 1990, make a demand for payment upon the defendants.
The defendants, Sheldon and Jennith Liner, do not deny that they have failed to pay the principal of the note when it became due, nor do they deny their failure to pay interest on the note subsequent to April 15, 1990. Robert Hinkle, vice president of the Bank of New Haven, testified that the principal and interest due and owing as of January 18, 1995 amounted to $262,023.85. He further testified that the per diem interest rate was $53.13.
Generally, the defenses available in a foreclosure action are limited to payments, discharge, release, satisfaction, and invalidity of the lien. However, foreclosure being an equitable action, the court may consider, aside from those enumerated, all relevant circumstances.
In the case of Reynolds v. Ramos, 188 Conn. 316, 320, the Supreme Court stated:
 "Because a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. City Savings Bank v. Lawlet, 163 Conn. 149, 155, 302 A.2d 252 (1972); Hartford Federal Savings Loan Assn. v. Lenczyk, 153 Conn. 457, 463, 217 A.2d 694 (1966). Although equitable power must be exercised equitably; Hammer v. Taylor, 180 Conn. 491, 497, 429 A.2d 946
(1980); `[t]he determination of the equities, is a matter for the discretion of the trial court', Kahalik v.CT Page 7600 Bernardo, 184 Conn. 386, 395, 439 A.2d 1016 (1981). . . ."
 "It is well settled that it is the province of the trier of fact to weigh the evidence presented and to determine its credibility and effect. Hally v. Hospital of St. Raphael, 162 Conn. 352, 359, 294 A.2d 305 (1972), id. 320."
The defendants in their first special defense allege misrepresentation on the part of the Bank of New Haven. It is their claim that the bank failed to disclose to the defendant Jennith Liner the nature of the loan, i.e., a commercial as opposed to a consumer loan. Attorney Peter Culver thoroughly informed the defendants of the nature of the transaction at the closing. In addition, the defendant, Jennith Liner, was involved in several previous commercial mortgages on residential properties in her name. The court cannot conceive of her being unaware of the nature of the subject mortgage. Furthermore, her husband acted as her agent in this and several other previous transactions of a similar nature wherein the title to the real property was in her name and was being pledged as collateral. There is no evidence that the Bank at any time misinformed the Liners. Rather, the evidence is to the contrary. They were in fact informed by the Bank that this was a commercial loan. In addition, the mortgage papers which Mrs. Liner signed were the same in nature as were signed by her on several previous occasions. These documents were clearly marked as being commercial and contained clear language to that effect. Mrs. Liner certified to this when she signed the documents. The court finds no misrepresentations on the part of the New Haven Savings Bank.
The defendants have failed to sustain their burden of proof as to the allegations contained in their counterclaim. As to the first count alleging fraud, there is no evidence of the same as indicated elsewhere in this memorandum.
For the defendant Bank to be guilty of fraud, the plaintiffs must show by clear and convincing evidence that: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the interest of inducing reliance there; and (4) the other party justifiably relied on the statement to his detriment.Maturo v. Gerard, 196 Conn. 584, 587. As indicated previously, there is no evidence that the Bank made any misrepresentations of fact to the Liners concerning the commercial nature of the loan. CT Page 7601 No statements known to be untrue were made by the Bank nor is there any evidence of inducement causing the defendants to rely on any such statement. The loan was solicited by Sheldon Liner in his own behalf and on behalf of his wife.
The second count charges the plaintiffs with violations of the Conn. Unfair Trade Practices Act (CUTPA) Sec. 42-110a of the Conn. General Statutes. Again, the defendants have failed to sustain their burden of proof. Section 110b(a) of the Conn. General Statutes reads as follows:
 "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
The application for the loan was made by Sheldon Liner who also was acting on behalf of his wife, Jennith Liner. They requested the loan in order to restructure the debt they presently had with the Bank, thereby procuring the benefit of a lower interest rate. They indicated that the remaining funds would be used in the ongoing condominium project in South Carolina. At the time of the closing, they were fully informed by their attorney who reviewed with them all of the mortgage papers. This was done outside the presence of the Bank officers. They acknowledged the loan to be a business loan. The conduct of the Bank was appropriate. There were no unfair or deceptive acts on the part of the Bank.
As for the subsequent defenses dealing with the Federal Truth in Lending Act, 15 U.S.C. § 1635, and the National Bank Act, 15 USCA Sec. 85, 86, the court finds no basis for the allegations. The National Bank Act regulates rates of interest that a national bank may charge. The evidence presented to the court shows the Bank of New Haven not to be a national bank but rather a state chartered bank.
As to the Federal Truth in Lending Act, the subject transaction was of a business or commercial nature and thus exempt from the provision granting to a consumer the right of recision. While the loan applied for was solicited by Sheldon Liner personally and on behalf of his wife as a business loan $100,000.00, of which was to pay off an existing business loan with the same bank and the remainder to go to the condominium project, they chose not to use the funds as requested. Actually, after the prior loan was paid off, approximately $50,000.00 went toward the CT Page 7602 remodeling of their home and only $20,000.00 went to the project in South Carolina. The majority of the loan, approximately $120,000.00, was for business purposes, thus exempting the transaction from the provisions of the Truth in Lending Act.
Whether a loan is a consumer loan or a commercial loan is to be determined by what has taken place at and prior to the closing of the transaction. Statements made by the debtor or the debtor's agent as to how the proceeds are to be used constitute the key evidence as to the nature of the transactions. See Federal DepositInsurance Corp. v. Monterrey, 847 F. Sup. 997, 1004 (D.P.R. 1994), aff'd. 45 F.3d 423 (1995). In Winkle v. Grand National Bank,267 Ark. 123, 137, 601 S.W.2d 559, 565, cert. denied, 449 U.S. 880
(1980), the court held that a loan application which stated its purpose to be commercial was exempt from truth in lending requirements.
The court, in reviewing the proceedings, finds that the evidence overwhelmingly indicates that the Liners obtained a business loan and Mrs. Liner pledged as collateral her property at 435 Sheldon Court. Jennith Liner had considerable experience enabling her to differentiate between a commercial and a consumer loan. A substantial majority of the proceeds of the loan went for business purposes. The evidence is heavily weighted in favor of the plaintiffs. The court finds for the plaintiffs on the complaint and for the defendant Bank of New Haven on the counterclaim. The court finds the debt to be $262,023.85 as of January 18, 1995 with a per diem of $53.13. The value of the property is found to be $207,000.00. Counsel fees are awarded in the amount of $22,765.00. An appraisal fee is awarded in the amount of $850.00. A judgment of strict foreclosure may enter with the law days to commence September 11, 1995.
The Court
 Curran, J. State Trial Referee