RAE S. HOADLEY ET AL. *v.* THE UNIVERSITY OF HARTFORD

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued December 15, 1978—decision released February 27, 1979

*Alan R. Tokay,* with whom, on the brief, was *Raymond B. Green,* for the appellant (defendant).

*Richard C. Tynan,* with whom, on the brief, was *John W. Lemega,* for the appellees (plaintiffs).

BOGDANSKI, J. The plaintiffs, Rae S. Hoadley and Robert A. Hoadley, brought an action to recover damages and medical expenses for the personal injuries allegedly caused to the plaintiff wife by the negligence of the defendant in failing to keep its premises in a reasonably safe condition. From the judgment rendered upon a verdict for the plaintiffs, the defendant has appealed to this court.

There was evidence before the jury from which the following facts could reasonably have been found: On the evening of November 14, 1972, the plaintiff Rae Hoadley drove a busload of high school students to the campus of the defendant. The students were invited to the university to view a dress rehearsal for a play in order that the actors might perform before a live audience. After parking the bus at a designated parking area, the plaintiff and the students walked to Auerbach Hall where the play was to be performed.

At 10:30 p.m. the plaintiff left the hall to get the bus and drive it to the entrance of Auerbach Hall so that the students could embark there. It was

dark and there was no sidewalk on the side of the paved roadway on which the plaintiff was walking. As she approached the parking lot, her right foot slipped off the edge of a concrete storm catch basin located near the edge of the road, and she fell. As she lay in the road, she could feel that the edge of the catch basin was higher than the road itself. As a result of the fall, the plaintiff sustained a compound fracture dislocation of her right ankle, which included multiple fractures of both the tibia and the fibula of the right leg.

On appeal the defendant contends that the trial court erred (1) in admitting the opinion evidence of the witness Alexander Chapman; (2) in charging the jury that the plaintiff was lawfully on the premises; (3) in submitting to the jury loss of future earning capacity as an element of damages; and (4) in denying its motion to set aside the verdict as excessive and contrary to law.

The defendant first asserts that the opinion testimony of Alexander Chapman, a safety engineer called by the plaintiffs, was without factual foundation and was therefore entirely speculative. The challenged testimony related to the chipping which Chapman observed on the corners of the concrete catch basin on which the plaintiff claimed she fell. Chapman was asked whether he had an opinion, based upon his examination of the catch basin, as to how this chipping had occurred, and whether he had an opinion, based upon his experience as a safety engineer, as to the purpose of that chipping. The defendant's objections that those questions were "not relevant to the case before us" were overruled, and the testimony of the witness was admitted by the court.

Trial courts have broad discretion in determining the relevancy of evidence. *State* v. *Rose,* 168 Conn. 623, 636, 362 A.2d 813 (1975); *Johnson* v. *Newell,* 160 Conn. 269, 277, 278 A.2d 776 (1971). In this instance the challenged questions were clearly relevant on the issue of whether the defendant had notice, actual or contructive, of the allegedly dangerous condition of the catch basin. See *Warren* v. *Stancliff,* 157 Conn. 216, 219, 251 A.2d 74 (1968).

The record indicates further that a proper foundation was laid for those questions. The initial question sought the witness' opinion "as to how this chipping was accomplished." In the absence of the jury, the witness testified that it was the size and nature of the chipping which had led him to conclude that it was done by hand and that he was familiar with such hand chipping. He further testified that the usual reason for such chipping was to remove a difference in elevation in order to eliminate a tripping hazard.

In any event, the later testimony of another engineer, Ivan Hayes, renders the defendant's objections moot. Hayes testified, without objection, that the catch basin had constituted a tripping hazard for at least eleven months prior to the plaintiff's fall. Thus, as the facts established by Chapman's testimony were otherwise established by the later testimony of Hayes, the error, if any, in allowing Chapman's testimony was harmless. *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 21–22, 118 A.2d 798 (1955).

The defendant next claims that the court erred in charging the jury that the plaintiff was "lawfully on the premises." The defendant argues that the charge while "technically and . . . legally correct" was, as a practical matter, confusing as it implied

that the plaintiff was properly in the roadway at the site of the catch basin and was therefore not chargeable with contributory negligence in failing to use the sidewalk located on the opposite side of the roadway.

The court instructed the jury in part as follows: "Insofar as the particular relationship which existed between the plaintiff, Mrs. Hoadley, and the defendant, University of Hartford, is concerned, and the particular rights and duties which arise from that relationship, under the circumstances of this case, you may consider the plaintiff, Mrs. Hoadley, to have the status of a business visitor or invitee. Now, an invitee is one who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with the business dealings between them. This definition includes both those who enter the premises to do business there and those who are there in furtherance of their own business which is directly or indirectly connected with any purpose, business or otherwise, for which it possesses or uses the land. Accordingly, the plaintiff was lawfully on the premises as an invitee and entitled to the protection accorded by law to invitees."

The court then went on to explain to the jury in the following manner the precise nature of the duty owed by a property owner to an invitee, i.e., to one lawfully on the premises: "Let me put it to you in this way: The basic question is whether a reasonably prudent person in the position of the defendant or its employees would reasonably have foreseen that there was an unreasonable risk of harm to such persons as the plaintiff coming onto this portion of the roadway at or about the time of her fall. If a reasonably prudent person would have

realized that such persons were being exposed to an unreasonable risk of danger, the dangerous condition should have been safeguarded in some reasonable fashion. If the defendant or its employees failed to realize what a reasonably prudent person in their position would have realized, and failed to take reasonable steps to avoid the danger, if it was a danger, then they were negligent under the law."

"[A] charge must be read as a whole . . . [and] the test is not whether it is exhaustive, [letter] perfect, or technically accurate . . . nor is it to be placed under a legal microscope for technical flaws." *Gosselin* v. *Perry,* 166 Conn. 152, 161–62, 348 A.2d 623 (1974). Having examined the court's charge, we conclude that it adequately and correctly apprised the jury of the rules of law which were to be applied to the evidence and that, in the context of the charge, the court's use of the term "lawfully on the premises" was neither confusing nor misleading.

The defendant next maintains that because there was no evidence of any future impairment of the plaintiff's earning capacity, the court erred in charging on loss of future earning capacity as an element of damages.

The record reveals that the plaintiff introduced evidence that after she sustained the injury to her ankle, she was unable to perform the maintenance and inspection activities which were a necessary part of her job, and that the incapacity would continue indefinitely into the future. There was medical evidence that the plaintiff now suffers a 30 percent permanent disability of the right ankle and the right leg and that while that disability is permanent and will not decrease, it may increase over the years.

In sum, there was evidence in the record indicating that the plaintiff's future earning capacity may have been impaired in several regards: (1) in her continuing inability to perform some aspects of her job-related duties; (2) in the prospect that the 30 percent permanent disability of her right leg would worsen and would diminish her future ability to assume extra income-producing bus driving jobs; and (3) in that the plaintiff would have requested and received a pay raise from her employer long before September, 1974, had she not been incapacitated by this injury.

While the burden of proving loss of earning capacity is always upon the plaintiff, the courts have never required "proof equivalent to a mathematical demonstration." *Lavieri* v. *Ulysses,* 149 Conn. 396, 408, 180 A.2d 632 (1962); *Turner* v. *Scanlon,* 146 Conn. 149, 159, 148 A.2d 334 (1959). The courts require only "that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation which will enable the trier to make a fair and reasonable estimate." *Ball* v. *Pardy Construction Co.,* 108 Conn. 549, 551, 143 A. 855 (1928); *Turner* v. *Scanlon,* supra. We conclude that the evidence presented as to the plaintiff's "incapacity to work as [she] had before the accident" and as to her future earning prospects provided a foundation upon which a reasonable estimate of damages could be based.

With respect to the motions directed to the verdict, we conclude, in view of our resolution of the aforementioned issues, that the trial court did not err in denying the motion to set aside the verdict.

There is no error.

In this opinion the other judges concurred.