ALINE MAGNON *v.* HERMAN GLICKMAN ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued May 6—decision released August 11, 1981

*Jacob H. Channin,* with whom, on the brief, was *David Roth,* for the appellants (defendants).

*Lawrence M. Lapine,* with whom, on the brief, was *Robert S. Bello,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This is an action for personal injuries arising from a fall which occurred on December 29, 1972, in the corridor of the defendants' building located in Stamford. The plaintiff alleged that she fell because the corridor floor was slippery and/or covered with a sticky substance, which condition, she claimed, was due to the negligence of the defendants. After a trial to the jury, a verdict was returned in favor of the plaintiff. Upon the denial of their motion to set aside the verdict and their motion for judgment,[1] the defendants have appealed.[2]

---

[1] When the plaintiff rested, the defendant made a motion for a directed verdict pursuant to Practice Book § 321 which the court did not grant. After the verdict the defendants filed their "Motion for Judgment" and "Motion to Set Aside Verdict." The "Motion to Set Aside Verdict" alleged that the verdict was contrary to law and the evidence, and was excessive. The "Motion for Judgment" moved that the court "set aside the Judgment thereon and . . . render Judgment in their favor in accordance with their Motion for Directed Verdict made pursuant to Sections 320 and 321 of the Practice Book" on the grounds that the verdict was contrary to law and to the evidence. The court denied these motions.

[2] In oral argument before us plaintiff's counsel stated that the plaintiff's cross-appeal was not being pursued.

The jury could have reasonably found the following facts: The defendants, Herman and Lawrence Glickman, are the owners of an apartment/office building complex in Stamford. Lawrence, who is the son of Herman, managed the building. The plaintiff began working in the defendants' building in early December, 1972. She was employed by the insurance agency of Casolo, Friedman & Paspalis & Co., which had its office located on the first floor of the building.

On December 29, 1972, at approximately 1 p.m., the plaintiff left the office through the rear door, which exits into the interior corridor. The plaintiff had been in the hallway perhaps once previously. As she exited through the door and took a few steps, she noticed that the floor was very slippery and her feet began to slide. Although walking at a normal pace, her feet slid from under her and flew up in the air, and she fell. Her employer, Louis Casolo, who witnessed the incident, assisted the plaintiff back to the office.

Later that day, the plaintiff reported her fall to the superintendent of the building and told him that she had fallen on the slippery floor. The superintendent wrote a memo to the defendant Lawrence Glickman on that date to that effect. Later that day the plaintiff pointed out to the janitor the spot where she had fallen.

The hallway floor, on which the accident occurred, for several months prior to December 29, 1972, not only had a highly polished and wet look but, in addition, was slippery. Others who worked in the plaintiff's office and who frequently used this hallway noticed that the floor was slippery and, there-

fore, walked with caution. Prior to the date in question, Casolo had, in fact, mentioned to the custodian that the floor was slippery and questioned his constant buffing of the floor. Furthermore, on a weekend during the same month, prior to the plaintiff's fall, Casolo's children, who had accompanied him to his office, slid on the first floor corridor floor.

## I

The defendants' first three claims of error are directed at the trial court's refusal to grant their motion for directed verdict and their motion for judgment notwithstanding the verdict.

## A

The defendants first claim that the "evidence presented by the plaintiff did not remove the cause of plaintiff's fall from the realm of speculation and was insufficient to support a judgment against the defendants." This contention appears to be based on their argument that "the jury could not have concluded that the fall was caused solely by the slipperiness of the floor and not by the foreign substance."

We have recently stated that, "[i]f, on the evidence, the jury could reasonably have decided as they did, we will not find error in the trial court's acceptance of the verdict. *Rood* v. *Russo,* 161 Conn. 1, 3, 283 A.2d 220 (1971); *Giambartolomei* v. *Rocky DeCarlo & Sons,* 143 Conn. 468, 474, 123 A.2d 760 (1956). A jury verdict should not be disturbed 'unless it is against the evidence or its manifest injustice is so plain as to justify the belief that the jury or some of its members were influenced by ignorance, prejudice, corruption or partiality.'

*Martino* v. *Palladino,* 143 Conn. 547, 548, 123 A.2d 872 (1956). Upon review, by the trial court on a motion to upset the jury's verdict and in this court, 'the evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable.' *Horvath* v. *Tontini,* 126 Conn. 462, 464, 11 A.2d 846 (1940)." *Kalleher* v. *Orr,* 183 Conn. 125, 126–27, 438 A.2d 843 (1981).

Upon review, we conclude that there was sufficient evidence to support the jury verdict. The plaintiff herself testified that the "foreign sticky" substance on the floor did not cause her to fall.[3] In addition, Casolo, who witnessed the plaintiff's fall, testified that he saw the plaintiff's feet "slide from under her" and she fell with her "feet up in the air." Combined with the other testimony that the floor was slippery,[4] we do not overturn the trial judge's ruling or the jury verdict.

## B

Secondly, the defendants claim that the court erred in failing to grant their motions because the evidence presented was "insufficient to show a defective condition in that the evidence was solely a subjective description of the floor as slippery." They claim that under our prior cases involving similar fact situations, the evidence was not sufficient to show that the floor was "defective." We disagree.

---

[3] The substance was referred to as both "foreign" and "sticky."

[4] For example, Casolo, the plaintiff's employer, also testified that the floor was "slippery" on the day of the plaintiff's fall as he walked on it, that he had noticed that it was in this condition for "months" prior to her fall, and that he was in the hallway "several times a day and you've got to walk with precaution [sic] on it."

We initially note that a jury "may make all inferences and conclusions which, in their judgment and discretion, may logically and reasonably be drawn from the facts in evidence. . . . The test is, not that the inference must unavoidably and unerringly point in one direction, but, rather, whether the rational mind could with reasonableness draw the inference. . . . If two rational minds could reasonably draw different inferences from facts in evidence, whether controverted or uncontroverted, the decision is for the jury." *Donovan* v. *Connecticut Co.*, 86 Conn. 82, 86, 84 A. 288 (1912).

In *Gray* v. *Fitzgerald & Platt, Inc.*, 144 Conn. 57, 127 A.2d 76 (1956), as in the present case, the plaintiff alleged that the defendant was negligent in maintaining the floor in a slippery and dangerous condition. The plaintiff in *Gray,* as the plaintiff in this case, made no allegation that the defendant breached any duty in polishing the floor. See *Smith* v. *Union & New Haven Trust Co.*, 121 Conn. 369, 185 A. 81 (1936). We noted in *Gray* (p. 59) that "the plaintiff was not limited to proof that the slippery condition of the floor resulted from the application of wax to it. She could make out a case by proving that the defendant was negligent in maintaining the floor in a slippery condition, irrespective of the cause of the slipperiness." We upheld a verdict for the plaintiff, stating that "[u]pon the evidence that the floor was so slippery that the plaintiff's son could slide upon it, the jury were entitled to infer that the defendant had failed to use reasonable care to keep its premises reasonably safe for its business visitors." *Gray* v. *Fitzgerald & Platt, Inc.,* supra, 59.

The defendants claim in their brief that in the present case, there was not sufficient evidence "to fall within the reasoning of the *Gray* case . . . ." We disagree. On the basis of the previously described evidence, it was not unreasonable for the jury to find that the defendants maintained the floor in a defective, i.e., slippery and dangerous, condition.

## C

The defendants also claim that the trial court was in error in denying their motions because "there was insufficient evidence that the defendants had actual or constructive notice of the allegedly defective condition." On the basis of our review of the evidence, as previously summarized, and in light of the great weight to be accorded to a jury verdict and the trial court's ruling on a motion to upset the verdict, we find no error. Not only was there evidence that the slippery condition existed from May, 1972,[5] to December, 1972, but there was testimony that Casolo, prior to the incident in question, had notified the janitor that the floor was slippery.[6]

## II

The defendants' next claim is that the trial court erred in allowing one of their witnesses to testify that he was employed by a liability insurance

---

[5] For example, Theresa Lasczak, who worked with the plaintiff, testified in part as follows: "Q. Mrs. Lasczak, what steps did you take between May and December 1972 when you walked down this corridor?

A. I decided to wear flat shoes at that point, because I had slipped, and I walked on my tiptoes.

Q. And did you do this throughout this period, including into December of 1972?

A. Yes."

[6] Casolo testified that "I just told him [the janitor] it was highly slippery; and you know why is he always buffing the floor down for, when he didn't really need it all the time."

carrier who insured the defendants. The defendants offered as a witness Ronald Patterson, an employee of the Greater New York Mutual Insurance Group, the liability carrier for the defendants, for the purpose of establishing the chain of custody with regard to two exhibits sought to be introduced by the defendants. On direct examination by the defendants' counsel, the witness testified that his occupation was that of an investigator for "a company." On cross-examination, plaintiff's counsel, over the defendants' objection, elicited that the witness worked for a liability insurance carrier which insured the defendants.[7]

---

[7] The relevant examination of the witness Patterson, together with the court's instructions to the jury at that time, are set out at this point. On direct examination by the defendants' counsel, the following occurred:

"Q. Mr. Patterson, what is your occupation?

A. Investigator.

Q. Are you self-employed or do you work for a company?

A. I work for a company.

Q. . . . Is part of your employer's business the investigation of personal injury claims that result in lawsuits?

A. Yes . . . .

Q. As a result of a request made by me and on behalf of the defendants in this case, did you late in November early in December of 1978 go to the Buckingham Wax Company in Long Island, New York?

A. Yes, I did."

On cross-examination by plaintiff's counsel the following occurred:

"Q. Mr. Patterson, what is the business of your full-time employer?"

(The objection of defendants' counsel to the question was overruled and an exception noted.)

"The Witness: Liability insurance carrier.

Q. And what is the relationship of your employer in this case?

A. The carrier."

(The objection of defendants' counsel at this point was overruled, and, at his request, the question was repeated.)

"Q. What is the relationship of your employer to the defendants in this case?

Generally, in negligence actions, evidence that the defendant carries liability insurance is inadmissible. See *Walker* v. *New Haven Hotel Co.*, 95 Conn. 231, 235, 111 A. 59 (1920); see 29 Am. Jur. 2d, Evidence § 404. This rule, however, is not without exception. See, e.g., *Gigliotti* v. *United Illuminating Co.*, 151 Conn. 114, 122, 193 A.2d 718 (1963) ("the fact that the contract contained references to insurance could not operate to exclude those portions if they were otherwise admissible and of probative value."); see also *Guarnaccia* v. *Wiecenski*, 130 Conn. 20, 25, 31 A.2d 464 (1943); *Muraszki* v. *William L. Clifford, Inc.*, 129 Conn. 123, 125, 128, 26 A.2d 578 (1942). "It is usually held that it is permissible for plaintiff's counsel, when acting in good faith, to show the relationship between a witness and defendant's insurance company where such evidence tends to show the interest or bias of the witness and affects the weight to be accorded his testimony." Annot., 4 A.L.R.2d 761, 779.

A. They are the carriers.

Q. Excuse me?

A. They are the carriers.

Q. They insure the defendants?

A. That is correct."

The court (immediately after the last question and answer) then said: "Mr. Lapine, at this point, I would like to interrupt. Ladies and gentlemen of the jury at this point from the answers of Mr. Patterson you are aware that there is insurance coverage in this case.

I want to emphasize right now at this point and for the remainder of the case that the lack of insurance or the presence of insurance in any case has nothing to do with the merits of the case.

The question of liability or damage as you may find should not in any way be influenced by the existence or nonexistence of insurance in the case, and I direct. you to treat the evidence that you have heard and the evidence you will hear in accordance with that direction. You may continue, Mr. Lapine."

We find no abuse of discretion on the part of the trial court in allowing this testimony. We initially note that the defendants themselves raised the matter of the witness' employment on their direct examination.[8] We also note that immediately after the challenged testimony was taken, and during its final instruction the court charged the jury that the fact that the defendants were insured should not influence them or their determination of liability or damages.[9] Under these circumstances, we find no error. See *Weimer* v. *Brock-Hall Dairy Co.*, 131 Conn. 361, 367, 40 A.2d 277 (1944).

## III

The defendants' next three attacks are aimed at the court's charge to the jury. They claim (1) that

[8] The plaintiff's brief points out that four days prior to Patterson's taking the witness stand the defendants raised the question whether he could be cross-examined as to his relationship with the defendants and his interest in the case. At that time a lengthy argument took place and the court indicated what questions could be asked on cross-examination, noting at that time that the "situation was created by choice by the defendants." The plaintiff's position was that cross-examination of Patterson here should be allowed as going to probe any interest or bias he might have.

[9] After the court charged the jury on the issues of liability and damages it said:

"Finally, there was testimony that Mr. Patterson, the person who delivered the wax, was employed by a liability carrier, and that liability carrier covered the defendants in this case as indicated at the time, and I repeat that again. The merits of this case have nothing to do with the existence or nonexistence of liability coverage, having been instructed, now, on the law, you can see that the issues, the presentation or absence of negligence, and if there is negligence, with the absence of contributory negligence, then it is a question of damages and the question of damages is only based on one thing, and that is fair and reasonable damages for the injuries sustained and proven by a fair preponderance of the evidence by the plaintiff, and these are the two guideposts for this case and the presentation or absence of the insurance has nothing to do with the case, and I instruct you to comply with that concept."

the court charged the jury in a contradictory and confusing manner "with regard to the question of a foreign substance on the floor"; (2) that the court erred by failing to define the terms "dangerous" and "slippery"; and (3) that the court erred in its use of the phrase "highly polished floors" as a basis for the defendants' liability.

## A

The defendants first argue that the court erred in its charge to the jury because its instructions with regard to the foreign "sticky substance" were contradictory and confusing. Because the plaintiff did not offer evidence of notice of a "sticky substance" on the floor, the court instructed the jury that this could not be a proper ground for recovery.[10] In addition to setting out this portion of the charge, in their brief the defendants point to other portions of the charge which they claim contradicted this charge and confused the jury. They argue: "Although the charge as set out may be technically a correct statement of the law and facts of the case at the bar, it was structured in a manner which would confuse and mislead the jury as to the various bases upon which the plaintiff was entitled to recover."

"The primary purpose of the charge to the jury is to assist them in applying the law correctly to the facts which they find to be established. *Vita* v. *McLaughlin*, 158 Conn. 75, 77, 255 A.2d 848 [1969];

---

[10] On at least two occasions during the instructions to the jury the court clearly told the jury that if it found that such a substance was a proximate cause of the plaintiff's fall that the plaintiff could not recover in the case.

*Worden* v. *Francis,* 153 Conn. 578, 579–80, 219 A.2d 442 [1966]. The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict. *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218 [1966]; *Fasanelli* v. *Terzo,* 150 Conn. 349, 357, 189 A.2d 500 [1963]." *Velardi* v. *Selwitz,* 165 Conn. 635, 637, 345 A.2d 527 (1974). A charge to the jury must be judged as a whole; *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 167, 438 A.2d 865 (1981); *Vandersluis* v. *Weil,* 176 Conn. 353, 360, 407 A.2d 982 (1978); and not dissected for minute flaws. *Hoadley* v. *University of Hartford,* 176 Conn. 669, 674, 410 A.2d 472 (1979); *Kosko* v. *Kohler,* 176 Conn. 383, 390, 407 A.2d 1009 (1978). The test is whether the charge as a whole fairly presented the case to the jury so that no injustice was done. *Tezack* v. *Fishman & Sons, Inc.,* 173 Conn. 183, 186, 377 A.2d 272 (1977).

We have reviewed the charge and find no error on this basis. Although the court read to the jury from the complaint, which contained allegations relating to recovery on the basis of the "sticky substance," and the court referred to this claimed basis of recovery in its charge, the court, more than once, instructed the jury that if they found the plaintiff's fall to have been proximately caused by the sticky substance, then she should not recover. It is presumed, absent any fair indication to the contrary, which is not present here, that the jury carried out the instructions of the court. See *Spiess* v. *Traversa,* 172 Conn. 525, 528, 375 A.2d 1007 (1977); *State* v. *Bausman,* 162 Conn. 308, 314, 294 A.2d 312 (1972). We hold that such a charge was not misleading or confusing, but fairly presented the case to the jury. Cf. *Velardi* v. *Selwitz,* supra.

## B

The defendants next argue that the charge is erroneous because the court did not define the terms "slippery" and "dangerous." We have held that "[i]t is not incumbent upon a court to define words in ordinary use when used in their ordinary sense." *Branch* v. *Mashkin Freight Lines, Inc.,* 134 Conn. 278, 281, 57 A.2d 136 (1948), quoting *State* v. *Enanno,* 96 Conn. 420, 427, 114 A. 386 (1921); see *State* v. *Maresca,* 173 Conn. 450, 460, 377 A.2d 1330 (1977); *D'Addario* v. *American Automobile Ins. Co.,* 142 Conn. 251, 256, 113 A.2d 361 (1955); *Fierberg* v. *Moulton,* 129 Conn. 536, 537, 29 A.2d 774 (1942); Maltbie, Conn. App. Proc. § 81; 75 Am. Jur. 2d, Trial § 701. Since the words were used in their ordinary sense, and because "[a] reasonably intelligent and literate person would have no difficulty in understanding them . . ."; *D'Addario* v. *American Automobile Ins. Co.,* supra, 256; we find no error.

## C

The defendants claim finally, with respect to the court's instructions, that the charge was erroneous because the court used the phrase "highly polished floors" as a basis for the defendants' liability, even though there was no allegation in the complaint that the floor was "highly polished."[11] We have stated that " '[a]lthough a charge may not be exhaustive, perfect or technically accurate, it will ordinarily be sustained if it is correct in law, adapted to the issues and sufficient for the guidance of the jury. *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 [1953]; Maltbie, Conn. App. Proc. § 76.' *Michaud*

---

[11] The complaint alleged that the floor was "slippery and dangerous."

v. *Gagne,* 155 Conn. 406, 412, 232 A.2d 326 [1967]." *Messina* v. *Iannucci,* 174 Conn. 275, 278, 386 A.2d 241 (1978). The charge "is not to be critically dissected for the purpose of discovering possible inaccuracies of statements but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 [1933]." *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); see *State* v. *Williams,* 182 Conn. 262, 268, 438 A.2d 80 (1980). "A charge must be judged in its entirety and not by critical examination of isolated words, phrases and passages culled from context. *Cuneo* v. *Connecticut Co.,* 124 Conn. 647, 653, 2 A.2d 220 [1938]; Maltbie, Conn. App. Proc., p. 71." *D'Addario* v. *American Automobile Ins. Co.,* supra, 254.

On this claim the defendants have culled two phrases from the court's charge, and have "subjected them, bare of the context in which they were placed and isolated from the rest of the charge, to their criticism." *M. Shapiro & Son Construction Co.* v. *Battaglia,* 138 Conn. 238, 243, 83 A.2d 204 (1951). In the context of the whole charge including the court's instructions that "the allegations of the plaintiff's complaint are the measure in this case of her right to recover," we find no error.[12]

---

[12] The court's charge also included the following instruction:

"The purpose of the pleadings in any case, including the complaint, the answer, and reply in this case, is to warn the opposing parties of the claims of the parties which it is to make on the trial, so that each party can fairly prepare his case.

"It necessarily follows from that that a party is restricted to the proof or allegation upon the particular grounds of action or defense as the case may be, accordingly, with the statement in his proceedings [sic] as distinguished from any other grounds of action, or of defense, which are inconsistent with, or not fairly raised in the statement of his pleadings."

## IV

The defendant's final claim is that the court erred in refusing to submit to the jury the defendants' interrogatories, "which requested a specific finding as to the effect and existence of a foreign or sticky substance on the floor." The trial court ordinarily has wide discretion in allowing interrogatories. *Falk* v. *Schuster,* 171 Conn. 5, 8, 368 A.2d 40 (1976). We have stated that where "different specifications of fact are alleged in support of one essential right, as where various grounds of negligence are alleged as a basis for a recovery for injuries resulting from a particular accident . . . the trial court may in the exercise of a reasonable discretion, submit interrogatories, if the circumstances of the case seem to make it desirable." *Ziman* v. *Whitley,* 110 Conn. 108, 116, 147 A. 370 (1929). In view of the fact that the trial court had appropriately instructed the jury that they could not return a plaintiff's verdict based on the existence of a sticky substance, and because it is presumed that the jury carried out the instruction of the court; *Spiess* v. *Traversa,* supra, 528; we find no abuse of discretion.

There is no error.

In this opinion the other judges concurred.