MARILYN KRATTENSTEIN *v.* JOHN M. THOMAS ET AL.
(3711)

DUPONT, C. J., BORDEN and DALY, Js.

Argued February 5—decision released June 10, 1986

*Gregory C. Willis,* with whom was *David W. Skolnick,* for the appellant (plaintiff).

*Michael D. Neubert,* for the appellee (defendant Norman Gahm).

DUPONT, C. J. The plaintiff appeals from the judgment rendered pursuant to a jury verdict for the defendant physician, Norman Gahm, in this medical malpractice action.[1] The plaintiff filed a motion to set aside the verdict which was denied. All of the issues on appeal concern the trial court's charge to the jury. The plaintiff claims that the trial court erred: (1) in charging the jury that a physician is not liable for bona fide errors in judgment; (2) in charging the jury on the definition of the term "immediate"; (3) in failing to charge the jury on the issue of a physician's vicarious liability; (4) in failing to instruct the jury that they could find negligence based upon the defendant's own testimony; and (5) in failing to instruct the jury as to the duration of a surgeon's duty of care to his patient.

Certain relevant facts are not in dispute. The plaintiff suffered from back pain as early as February, 1973. She consulted the defendant who was then a practicing neurological surgeon with six years experience. He suggested that she undergo further testing at Hartford Hospital. The plaintiff was admitted to the hospital where it was determined that the plaintiff suffered from a herniated disc in her lower back. The defendant operated on the plaintiff, which involved the removal of ruptured disc material. Following this surgery, the plaintiff experienced a temporary inability to void, a common condition following such an operation. The plaintiff regained normal bladder function after a few days. She was discharged from the hospital on April 19, 1973.

Approximately eleven months later, the plaintiff was still experiencing back pain. On March 10, 1974, she was admitted to Hartford Hospital, still under the care of the defendant. More tests were performed which indicated an extradural defect in approximately the

---

[1] The action against John M. Thomas, an anesthesiologist, was withdrawn. As used in this opinion, the "defendant" refers to Norman Gahm.

same area as the prior surgery. On March 12, 1974, the defendant operated on the plaintiff for the second time, again removing ruptured disc material. The plaintiff's substituted complaint alleges that it was during this second operation and the attendant postoperative care that the defendant acted negligently.

The plaintiff alleged that during this operation, the defendant retracted certain dura matter[2] in such a way as to injure those nerves which control the bladder. Following this second operation, the plaintiff again experienced an inability to void. This condition necessitated catheterization to relieve the plaintiff's overdistended bladder. The condition, however, did not go away as it had before. On March 19, 1974, Bert B. Berlin, a urologist, examined the plaintiff at the defendant's request, to determine the cause of the plaintiff's difficulty. Subsequent to the initial consultation by Berlin, the plaintiff continued to experience an inability to void. The plaintiff was discharged from the hospital on April 10, 1974. She continued to experience an inability to void which required the continued use of a Foley catheter. She visited the defendant's office after her discharge from the hospital. She was readmitted to the hospital on July 10, 1974, for one week under the care of Berlin. She was last seen by the defendant on September 24, 1974. Since that time, she contends that her condition has deteriorated and that she will require further surgery to remedy her bladder dysfunction, including procedures resulting in the insertion of a permanent artificial pathway for urination.

I

The plaintiff's first claim on appeal is that the trial court erred when it charged the jury that a physician is ordinarily not liable for bona fide errors in judgment.

---

[2] Dura matter is the outermost membrane enveloping the spinal cord. See Schmidt, Attorney's Dictionary of Medicine D-118.

The plaintiff claims that such a charge is erroneous and serves only to confuse the jury by implying that the defendant will not be liable for negligent conduct, absent evidence that he acted in bad faith. The plaintiff cites *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 299, 465 A.2d 294 (1983) in support of this claim.

It is clearly error for a trial court to instruct a jury that a physician is not liable for bona fide errors in judgment. See *Logan* v. *Greenwich Hospital Assn.*, supra; *Levett* v. *Etkind,* 158 Conn. 567, 576, 265 A.2d 70 (1969); *Green* v. *Stone,* 121 Conn. 324, 330, 185 A. 72 (1936); *Sleavin* v. *Greenwich Gynecology & Obstetrics, P.C.,* 6 Conn. App. 340, 346, 505 A.2d 436, cert. denied, 199 Conn. 807, 508 A.2d 32 (1986). Such a statement is inaccurate and tends to obfuscate the minimum standard of professional conduct. "Errors in judgment which occur with the best intentions constitute negligence if they result from a failure to use reasonable care." *Logan* v. *Greenwich Hospital Assn.,* supra. A determination that the instruction was erroneous, however, does not end our inquiry. See *Sleavin* v. *Greenwich Gynecology & Obstetrics, P.C.,* supra, 347. We must consider the charge as a whole to determine whether the inclusion of the erroneous statement so distorted the charge as to preclude a fair presentation of the case to the jury, thereby resulting in an injustice. *Magnon* v. *Glickman,* 185 Conn. 234, 244, 440 A.2d 909 (1981). " 'The charge will ordinarily be sustained if it meets this test, although it may not be exhaustive, perfect or technically accurate. *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953).' *Farley* v. *T.R.W., Inc.,* 4 Conn. App. 191, 193–94, 493 A.2d 268 (1985)." *Sleavin* v. *Greenwich Gynecology & Obstetrics, P.C.,* supra, 344.

The jury charge on the defendant's standard of care was as follows: "Negligence on the part of a physician or surgeon is a failure to exercise that degree of rea-

sonable and ordinary care, diligence and skill in diagnosis and treatment of his patient that is ordinarily possessed and exercised by physicians engaged in the same line of practice. . . . A physician or surgeon is ordinarily not liable for bona fide errors in judgment unless he has failed to use proper and reasonable care in the exercise of his operation and [during the] postoperative days. He is liable only if he fails to use a proper degree of skill and care in making a diagnosis and treating a patient." There was no allegation in the complaint that the defendant acted in bad faith. Nor does the plaintiff allege that such a claim was made during the trial. We also note that the trial court correctly stated the applicable standard of care three times in its charge. Only once did it include the erroneous language regarding bona fide errors in judgment. From our review of the charge as a whole, we conclude that the erroneous instruction could not have misled or confused the jury. See *Megin* v. *Carney,* 148 Conn. 130, 133, 167 A.2d 855 (1961); *Sleavin* v. *Greenwich Gynecology & Obstetrics, P.C.,* supra, 348.

## II

The plaintiff's second claim of error concerns the trial court's instruction regarding the scope of the defendant's duty of care to the plaintiff during the "immediate postoperative period." The plaintiff complains that the trial court's definition of the term "immediate" as meaning "presently, without any substantial interval of time elapsing" was too narrow and precluded the jury from finding liability based upon allegedly negligent acts occurring several days after the surgery. In charging the jury on this claim, the trial court instructed the jury as follows: "In deciding the [issue of the defendant's negligence during] the immediate postoperative period, it will be your duty to determine what responsibility there was during that period and for how far that period extended. You are the triers

of fact, the ultimate arbiters as to what those terms mean. . . . " The court assisted the jury in its deliberation on this issue by reading to the jurors two definitions of the term "immediate," one from Webster's Third New International Dictionary[3] and another from *O'Brien* v. *Wise & Upson Co.,* 108 Conn. 309, 313, 143 A.2d 155 (1928). The *O'Brien* case concerned an injury resulting in an immediate inability to work. The trial court's quote from the *O'Brien* case was as follows: " 'The word "immediately" does not mean instantly, in the sense that a man shall be totally disabled from the very second of the accident which has caused the injury. . . . "Immediately" means *presently or without any substantial interval of time elapsing.' "* (Emphasis added.) The court concluded its instruction on this issue by pointing out the conflicting arguments as to the duration of the defendant's responsibility for care of the plaintiff's bladder problem. The court summarized the evidence as allowing a finding that the defendant was no longer responsible for the plaintiff's bladder problem as early as when Berlin was called in as a consultant or as late as her discharge from the hospital. The court left the resolution of this discrepancy "for you [the jury] to determine from all the evidence in the case."

The plaintiff objected to the reading of a portion of the *O'Brien* case without also reading the sentence which followed. That excluded portion stated "[a]s judicially construed, however, ['immediately'] is a word of relative significance, much in subjection to its grammatical connection, and used with more or less latitude according to the subject to which it is applied." *O'Brien* v. *Wise & Upson Co.,* supra, 312. We find that the trial

---

[3] The court quoted part of the definition of the word "immediate" as follows: "Near to or related to. . . . Not secondary or remote. . . . Occurring without intervention of other object or cause." See Webster, Third New International Dictionary.

court's charge was sufficient to allow the jurors to conclude that they could find that the defendant was responsible for the treatment of the plaintiff's bladder problem as late as the date she left the hospital. Reviewing the charge as a whole, we find that it was accurate and fairly presented the plaintiff's case to the jury. *Herb* v. *Kerr,* 190 Conn. 136, 138–39, 459 A.2d 521 (1983); *Magnon* v. *Glickman,* supra, 244–45.

### III

The plaintiff's third claim of error is that the trial court erred in failing to instruct the jurors as requested that they could find the defendant liable "for all the wrongful acts or omissions of [the consulting physician] which [the defendant] observes and lets go on without objection, or which in the exercise of reasonable diligence under the circumstances he should have observed." The defendant argues that such a charge was not warranted by the pleadings and as such was properly denied.

" 'It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. *Nash Engineering Co.* v. *Norwalk,* 137 Conn. 235, 239, 75 A.2d 496 [1950].' " *Matthews* v. *F.M.C. Corporation,* 190 Conn. 700, 705, 462 A.2d 376 (1983). A plaintiff, therefore, may not claim as error the trial court's refusal to grant a request to charge on any issue not reasonably given rise to by the pleadings. See *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 358, 294 A.2d 305 (1972). The pleadings are to be read "broadly and realistically, rather than narrowly and technically." *DeMartin* v. *Yale-New Haven Hospital,* 4 Conn. App. 387, 390, 494 A.2d 1222, cert. denied, 197 Conn. 813, 499 A.2d 62 (1985).

In the present case, there were several amendments to and substitutions of the complaint. None, however, even mention the consulting physician, Berlin, or allege

that he was negligent in his treatment of the plaintiff. The issues arising from the plaintiff's claim of vicarious liability are substantively different from the claim in the complaint of the defendant's negligence. In this case, the claim of vicarious liability would require proof that Berlin was negligent. It would also require proof of what Gahm observed or should have observed in the exercise of reasonable care. Even a broad reading of the plaintiff's complaint did not give the defendant notice of these additional issues. See *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 223–24 n.16, 477 A.2d 988 (1984). It is also relevant that the plaintiff was given ample opportunity to amend her pleadings to include this claim if she wished. While the plaintiff cites evidence to show that the defendant was responsible for the care of the plaintiff's bladder problem up to the time she left the hospital, she does not allege, nor did she present evidence, that the defendant observed or should have observed in the exercise of reasonably prudent care Berlin's allegedly negligent conduct.[4] We cannot find, therefore, that the trial court's refusal to charge on this issue was improper.

## IV

The plaintiff's fourth claim of error is that the trial court erred in failing to instruct the jurors that they could "base a finding of negligence upon the expert testimony of the defendant doctor himself as well as that of other experts." We agree that the defendant's own expert testimony could provide the jury with a basis upon which to find the appropriate standard of care. See *Dinnerstein* v. *United States,* 486 F.2d 34, 36 (2d Cir. 1973); *Levett* v. *Etkind,* supra, 575; *Console* v.

---

[4] Our review of the record discloses only a broad statement by the plaintiff's expert witness that the treatment which the plaintiff received was below that standard of care exercised by neurosurgeons and urologists.

*Nickou,* 156 Conn. 268, 274, 240 A.2d 895 (1968). The requested charge was correct in law and reasonably adapted to the issues. In viewing the charge given as a whole, however, we cannot find that the failure to give the charge misled the jury. See *Herb* v. *Kerr,* supra, 138–39; *Magnon* v. *Glickman,* supra, 245. It was undisputed that the defendant possessed the necessary credentials to practice neurological surgery and therefore is a qualified expert in the field. It is also apparent that the defendant was allowed to testify as to the applicable standard of care for retracting the dura during surgery. Because the defendant's qualifications as an expert were undisputed, the trial court's charge on the issue of the standard of care owed to the plaintiff and the importance of expert testimony in establishing that standard encompassed the defendant's testimony. The fact that the trial court did not specifically mention the defendant's testimony during the charge is of no consequence. *Cross* v. *Huttenlocher,* 185 Conn. 390, 394, 440 A.2d 952 (1981). The trial court did not err in refusing this request to charge.

V

The plaintiff's fifth claim of error alleges that the trial court erred in refusing to grant the following request to charge: "In the instant case the agreement between the plaintiff, a private patient of the defendant, and the defendant doctor, necessarily included the defendant's obligation to skillfully perform the surgery and to provide competent and proper post-operative care while the plaintiff remained hospitalized.

"The obligation of the defendant as the operating surgeon to provide competent and proper post-operative care continues even after the consultant, Dr. Berlin, entered upon the case on March 19, 1974. This responsibility, from that point on, continues until either the patient is discharged or is transferred from the defendant's service to the service of another physician."

As to those portions of the requested charge relating to a surgeon's duty to render competent care, a similar instruction was already given. The exclusion of those portions of the request, therefore, was not error. See *Herb* v. *Kerr,* supra. Those portions of the requested charge relating to the duration of the defendant's duty to the plaintiff assume facts which were properly reserved for determination by the jury. The trial court's refusal to grant those portions of the charge was also proper. See *Trzcinski* v. *Richey,* 190 Conn. 285, 296, 460 A.2d 1269 (1983). The trial court's refusal to give the plaintiff's requested charge was proper.

There is no error.

In this opinion the other judges concurred.