## THE METROPOLITAN DISTRICT *v.* HOUSING AUTHORITY OF THE CITY OF HARTFORD
### (5394)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 2—decision released September 22, 1987

*Rudolph P. Arnold,* for the appellant (respondent).

*Cecily A. Isbell,* with whom were *Bourke G. Spellacy* and, on the brief, *David Hetzel,* for the appellee (petitioner).

HULL, J. The petitioner in this action is a municipal corporation authorized, inter alia, to deliver water and sewer services to the residents of the Metropolitan District, which includes the city of Hartford. The respondent is a public housing authority which owns low and moderate income housing projects in the city of Hartford. The petitioner has, for a number of years, provided sewer services to the respondent's housing projects.

On January 16, 1986, the petitioner filed a petition in the Superior Court for the appointment of a receiver of rents.[1] The petitioner asserted that from January 1,

---

[1] General Statutes § 16-262f provides in relevant part: "(a) Upon default of the owner, agent, lessor or manager of a residential dwelling who is billed directly by an electric, gas, telephone or water company or by a municipal utility for utility service furnished to such building, such company or municipal utility may petition the superior court or a judge thereof, for appointment of a receiver of the rents or payments for use and occupancy for any dwelling for which the owner, agent, lessor or manager is in default. The court or judge shall forthwith issue an order to show cause why a receiver should not be appointed, which shall be served upon the owner, agent, lessor or manager or his agent in a manner most reasonably calculated to give notice to such owner, agent, lessor or manager as determined by such court or judge, including, but not limited to, a posting of such order on the premises in question. A hearing shall be had on such order no later than seventy-two hours after its issuance or the first court day thereafter. The sole purpose of such a hearing shall be to determine whether there is a sum due and owing between the owner, agent, lessor, or manager and the company or municipal utility. The receiver appointed by the court shall collect all rents or payments for use and occupancy forthcoming from the occupants of the building in question in place of the owner, agent, lessor or manager. The receiver shall pay the petitioner or other supplier, from such rents or payments for use and occupancy, for electric, gas, telephone, water or heating oil supplied on and after the date of his appointment. The owner, agent, lessor or manager shall be liable for such reasonable fees and costs determined by the court to be due the receiver, which fees and costs may be recovered from the rents or payments for use and occupancy under the

1982, until the time of the petition, the respondent refused to pay the amounts it owed the petitioner for sewer services rendered. The court denied the respondent's motion to dismiss the petition, and the case proceeded to a hearing.

The parties agreed that the amount of disputed charges, as of August 7, 1986, was $581,482.[2] At the hearing, the respondent sought to introduce three contracts into evidence. The respondent made an offer of proof that the contracts dealt with the issue of sewer charges and contained a covenant from the city of Hartford to provide sewer services in exchange for specific payments from the respondent. The court sustained the petitioner's objection that the documents were not relevant.

control of the recover, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service and heating oil deliveries has been made. The owner, agent, lessor or manager shall be liable to the petitioner for reasonable attorney's fees and costs incurred by the petitioner, provided no such fees or costs shall be recovered until after payment for current electric, gas, telephone and water service and heating oil deliveries has been made and after payments of reasonable fees and costs to the receiver. Any moneys from rental payments or payments for use and occupancy remaining after payment for current electric, gas, telephone and water service or heating oil deliveries, and after payment for reasonable costs and fees to the receiver, and after payment to petitioner for reasonable costs and fees to the receiver, and after payment to the petitioner for reasonable attorney's fees and costs, shall be applied to any arrearage found by the court to be due and owing the company or municipal utility from the owner, agent, lessor or manager for service provided such building. Any moneys remaining thereafter shall be turned over to the owner, agent, lessor or manager. The court may order an accounting to be made at such times as it determines to be just, reasonable, and necessary."

[2] The transcript states that "Both [counsel] have conferred upon these matters. And our agreement is as follows. That the total amount due to the Metropolitan District as of today's date, August 7, 1986, is the amount of $783,220.98 . . . applying [certain credits] to the total . . . We come up with a balance due to the Metropolitan District in the amount of $581,482."

On August 7, 1986, the court made a finding that $581,482 was owed to the petitioner from the respondent. It stated further that "[g]iven the nature of the Housing Authority it would appear to the court that the best interests of all the parties would be served by postponing or delaying the effective date of the appointment of a receiver of rents until September 2, 1986, to give an opportunity for the payment of those arrearages." On August 29, 1986, the court appointed a receiver of rents, to become effective September 2, 1986. The respondent has appealed from the August 7, 1986 order claiming that the court erred (1) in denying it's motion to dismiss, (2) in disregarding pertinent statutes, (3) in refusing to admit relevant contractual evidence, and (4) in granting the petition when there was not sufficient evidence to support the court's findings.

I

As a preliminary matter, the petitioner has raised the question of whether this appeal has been taken from a final judgment. In *E. J. Hansen Elevator, Inc.* v. *Stoll,* 167 Conn. 623, 627, 356 A.2d 893 (1975), the Supreme Court developed two distinct tests for determining whether there is an appealable final judgment in a case. One test is whether the rights of a party are concluded by the order. See *Gores* v. *Rosenthal,* 148 Conn. 218, 221, 169 A.2d 639 (1961). The other test is whether the order terminates a separate and distinct proceeding. See *Dewart* v. *Northeastern Gas Transmission Co.,* 139 Conn. 512, 514, 95 A.2d 381 (1953); see also *Stroiney* v. *Crescent Lake Tax District,* 197 Conn. 82, 84-85, 495 A.2d 1063 (1985). In applying both of these tests to the facts of the present case, we conclude that an appealable final judgment does exist.

When judgment was rendered on August 7, 1986, the rights of the parties had been concluded. The petitioner

at that point had the right to $581,482 from the respondent. The respondent no longer had the right to contest the issue of liability. Further, at the conclusion of proceedings on August 7, 1986, the court ordered the execution of the judgment, in the form of the appointment of a receiver, unless the arrearages were paid before September 2, 1986. The court did not reserve decision on whether to appoint a receiver. It merely delayed the effective date of the appointment of that receiver.

Moreover, a separate and distinct proceeding was terminated once the court determined that the debt was due and a receiver should be appointed. See *Southern Connecticut Gas Co.* v. *Housing Authority,* 191 Conn. 514, 524, 468 A.2d 574 (1983). The written order of August 29, 1986, was merely the implementation of the judgment of August 7, 1986. That the order which entered on August 7, 1986, did not provide that a receiver begin his or her duties immediately in no way detracts from its being a final adjudication of the amounts owed to the petitioner. We therefore will consider the claims raised by the respondent.

## II

The respondent's first claim is that the court erred in denying its motion to dismiss, which raised the question of whether sewer services are a utility service for which a receiver can be appointed. The respondent contends that a utility receivership authorized by General Statutes § 16-262f is limited to the four utility services stated in the statute: water, gas, electric and telephone.

General Statutes § 16-262f (a) provides in relevant part that "[u]pon default of the owner, agent, lessor or manager of a residential dwelling who is billed directly by an electric, gas, telephone or water company or by a municipal utility for utility service furnished to such building," the utility may petition for

appointment of a receiver of rents. The respondent interprets the term "utility service" not to include sewer charges. We disagree.

General Statutes § 16-1, the general definitions section for title 16 of the General Statutes, does not define either "municipal utility" or "utility service." Nor does chapter 283, which contains the statutory section at issue here, § 16-262f. Both the common usage of the statutory language and the statutory scheme, however, bear out that sewer services are included in the utilities referred to in the statute, and are thus the proper subject of a receivership.

The petitioner is a municipal corporation, created in 1929 by a special act of the General Assembly, 20 Spec. Acts 1204, No. 511, which was given "broad powers relating to sewage disposal, water supply and regional planning as well as powers limited to certain highways." *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District,* 160 Conn. 446, 450, 280 A.2d 344 (1971). Such a municipal entity is commonly considered a "utility." In chapter 293 of the General Statutes § 16-345 (c), the term "public utility" is specifically defined to include the "owner or operator of underground facilities for furnishing . . . sewage . . . service . . . ."

Moreover, as the trial court observed, sewer services are commonly considered utility services. In *Clay* v. *East Orange,* 177 N.J. Super. 79, 85, 424 A.2d 1199 (1980), the court stated that a "sewerage service charge is, in fact, a utility charge." In *Ripperger* v. *City of Grand Rapids,* 338 Mich. 682, 687, 62 N.W.2d 585 (1954), the court said, "Water bills and bills for use of the sewer are very much alike. A public sewer system is a public utility the same as a water system."

Accordingly, as a municipal corporation rendering utility services in the form of sewer services, the peti-

tioner is a "municipal utility" within the meaning of the statute. Further, sewer services, like water services, are considered "utility services" and fit within the scope of General Statutes § 16-262f.

General Statutes § 16-262f was enacted as part of Public Acts 1975, No. 75-625, now codified as General Statutes §§ 16-262c through 16-262i. The legislature did, in some of the sections, refer to municipal utilities furnishing specific utility services. The referrals are specific and selective, however. The legislature did not specify the same utility services in each instance. For example, in § 16-262c (a), the legislature spoke of a "municipal utility furnishing electric, gas, telephone or water services"; in § 16-262c (b) (1) the legislature spoke of a "municipal utility furnishing electricity or gas"; and in § 16-262d (a), it spoke of a "municipal utility furnishing electric, gas or water service." In §§ 16-262e (a) and 16-262f (a), however, the legislature dispensed with the specification described above and simply used the phrase "municipal utility for utility service."

General Statutes § 16-262f provides for a specific schedule of payment priorities to be followed by the receiver after his or her appointment. Charges for electric, gas, telephone, water or oil which accrue after the appointment of the receiver are to be paid first. The statute provides next, however, for costs and expenses, and then for "any arrearage found by the court to be due and owing the company or *municipal utility* . . . for *service* provided . . . . " (Emphasis added.)

If the legislature had meant to provide only for payment to the five utilities provided for earlier in the statute, it would have again used the specific references. We interpret that general language to represent a conscious decision by the legislature not to limit the remedy created by these statutes to those municipal utilities

providing only electric, gas, water or telephone services. We therefore conclude that the trial court correctly denied the respondent's motion to dismiss.

## III

The respondent's next claim is that the court erred in disregarding state statutes that relieve the respondent of liability for sewer use charges. The respondent relies on General Statutes §§ 8-71 and 8-216 (b), which it asserts obligate a housing authority to pay only a fixed sum to be determined by the municipality with the approval of the state commissioner of housing.

General Statutes § 8-71 provides: "In lieu of real property taxes, special benefit assessments and sewerage system use charges *otherwise payable to such municipality,* except in such municipalities as, by special act or charter, on May 20, 1957, had a sewer use charge, an authority shall pay each year to *the municipality* in which any of its moderate rental housing projects are located a sum to be determined by *the municipality,* with the approval of the commissioner of housing, not in excess of twelve and one-half per cent of the shelter rent per annum for each occupied dwelling unit in any such housing project hereunder; except that the amount of such payment shall not be so limited in any case where funds are made available for such payment by an agency or department of the United States government, but no payment shall exceed the amount of taxes which would be paid on the property were the property not exempt from taxation." (Emphasis added.)

The petitioner is not a "municipality" within the meaning of General Statutes § 8-71 as defined in General Statutes § 8-39 (*l*), for it is not a "city, borough or town." The petitioner certainly is not "the municipality" referred to in § 8-71, for it is not "the particu-

lar municipality for which a particular housing authority is created," as defined in § 8-39 (*l*). That entity is the city of Hartford.

General Statutes § 8-71 creates an accommodation between municipalities and tax exempt housing authorities in order to reimburse the muncipality for lost tax revenue. That statute, however, does not concern an independent, coexistent municipal entity. It does not refer to the Metropolitan District, and therefore nothing in the statute absolves the respondent of its obligation to pay for sewer services.

The respondent also relies on General Statutes § 8-216 (b)[3] to absolve it of liability to the petitioner. Again, the reliance is misplaced. We have reviewed the statute and find nothing in it to absolve the respondent of its obligation to pay for sewer services, and nothing in the statute which requires the petitioner to seek payment of these charges from anyone other than the respondent. That statute, which does not mention any utility service, only authorizes the state to enter into

---

[3] General Statutes § 8-216 (b) provides that: "The state, acting by and in the discretion of the commissioner of housing, may enter into a contract with a municipality and the housing authority of the municipality to make payments in lieu of taxes to the municipality on land and improvements owned or leased by a housing authority under the provisions of part II of chapter 128. Such payments shall be made annually in an amount equal to the taxes that would be paid on such property were the property not exempt from taxation, and shall be calculated by multiplying the assessed value of such property, which shall be determined by the tax assessor of such municipality in the manner used by such assessor for assessing the value of other real property, by the applicable tax rate of the municipality. Such contract shall provide that, in consideration of such grant-in-aid, the municipality shall waive during the period of such contract any payments by the housing authority to the municipality under the provisions of section 8-71, and shall further provide that the amount of the payments so waived shall be used by the housing authority for a program of social and supplementary services to the occupants or shall be applied to the operating costs or reserves of the property, or shall be used to maintain or improve the physical quality of the property."

agreements with a municipality in which the state may agree to make payments in lieu of taxes (PILOT) to the municipality on behalf of a housing authority. It does not create direct liability between the Metropolitan District and the city. The respondent's claims that it is statutorily absolved of liability are therefore without merit.

## IV

The respondent's next claim is that the court erred in refusing to admit into evidence three contracts which contain a promise from the city of Hartford to provide sewer services in exchange for specific payments from the respondent.

"The rules for determining the admissibility of evidence are well settled. The trial court has broad discretion to determine both the relevancy and remoteness of evidence. *State* v. *Fritz,* 204 Conn. 156, 167, 527 A.2d 1157 (1987); *State* v. *Boucino,* 199 Conn. 207, 225, 506 A.2d 125 (1986); *Turgeon* v. *Turgeon,* 190 Conn. 269, 273, 460 A.2d 1260 (1983); *Hughes* v. *Contemporary Mission, Inc.,* 180 Conn. 150, 153, 429 A.2d 827 (1980). Only upon a showing of a clear abuse of discretion will this court set aside on appeal rulings on evidentiary matters. *State* v. *Fritz,* supra, 167–68; *State* v. *Boucino,* supra; *State* v. *Falcon,* 196 Conn. 557, 566, 494 A.2d 1190 (1985). In considering the relevancy of evidence, we ask whether 'it tends to establish the existence of a material fact or to corroborate other direct evidence in the case. *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Mastropetre,* 175 Conn. 512, 517, 400 A.2d 276 (1978).' *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985). Because there is no precise and universal test of relevancy, however, the question must ultimately be addressed on a case-by-case basis in accordance with ' "the teachings of reason and judicial experience." ' *State* v. *Sharpe,* supra,

659; *Johnson* v. *Healy,* 183 Conn. 514, 516, 440 A.2d 765 (1981); *Hoadley* v. *University of Hartford,* 176 Conn. 669, 672, 410 A.2d 472 (1979)." *Dunham* v. *Dunham,* 204 Conn. 303, 324, 528 A.2d 1123 (1987).

The operative language in each contract is substantially the same, and states in pertinent part: "The city agrees that, during the period commencing with the date of the acquisition of any part of the site or sites for each Project and continuing throughout the useful life of such project, it will not levy, impose or charge any taxes, special assessments, service fees, charges or tolls against the project or against the Authority and will furnish, without cost or charge to the Authority or the tenants thereof, municipal services and facilities for such Project and the tenants thereof, of the same character as those furnished without cost or charge for other dwellings and inhabitants in the City, including but not limited to: fire, police and health protection and services, street maintenance, snow removal, garbage, trash and ash collection and disposal, sewer services, street lighting on public streets within any Project and on the boundaries thereof . . . ."

What the respondent again fails to note is that the petitioner is not a party to this contract. The contract is between the city of Hartford and the respondent, and does not absolve the respondent of direct liability to the petitioner.

Section S121 of the Hartford city ordinances provides that the "sewer user charge will be billed to the property owner of record of the property." An ancillary contract discussing secondary liability for sewer payments could have no effect on the respondent's obligations to the petitioner. See generally *Stowe* v. *Smith,* 184 Conn. 194, 196, 441 A.2d 81 (1981); 17 Am. Jur. 2d, Contracts § 294. While the court found that the respondent does have a claim against the city of Hartford for

payment of its sewer charges, that contractual right cannot be interpreted to allow the respondent to avoid its direct obligation to the petitioner. The trial court therefore did not abuse its discretion in denying admission of the three contracts in question.

## V

The respondent's final claim is that there was insufficient evidence in the record to support the court's finding of a debt due from the respondent to the petitioner. "An appeal based on the sufficiency of evidence to support a factual finding carries a legal and practical restriction to review. The function of the appellate court is to review, and not to retry, the proceedings of the trial court. The scope of review is delineated in Practice Book § 4061 as follows: 'The [appellate] court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.' Practice Book § 4061 makes explicit what was implicit in its predecessor; Practice Book § 3060D; namely, that the 'clearly erroneous' test applies only to the 'factual findings' of the trial court, and not to its legal conclusions. ' "We cannot retry the facts or pass upon the credibility of the witnesses." *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975) . . . .' *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 220, 435 A.2d 24 (1980); *Cook* v. *Nye,* 9 Conn. App. 221, 224, 518 A.2d 77 (1986).

"As a corollary of our limited scope of review, in an appeal based on a claim of evidentiary insufficiency regarding a factual finding we do not examine the record to determine whether the judge or trier of fact could have made a finding other than the one made. Instead, we first determine whether there is evidence to support the finding. If not, the finding is clearly erroneous.

Even if there is evidence to support it, however, a finding is clearly erroneous if 'in view of the evidence and pleadings in the whole record [this court] is left with the definite and firm conviction that a mistake has been committed.' *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985)." *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44–45, 521 A.2d 221 (1987).

The parties stipulated that the petitioner had provided $1,874,486.72 worth of sewer services to the respondent, and that, with certain payments credited, the amount still outstanding totaled $581,482. The statutory scheme provides for the petitioner to bill the record owner of the property directly. There is no evidence of any agreement or provision which would make a third party liable for the debts of the respondent. In all, we cannot say that the trial court's action was clearly erroneous.

There is no error.

In this opinion the other judges concurred.