## THE BRIDGEPORT MORTGAGE AND REALTY CORP.
*vs.*
## HARRIET A. WHITLOCK, ADMX. ET ALS.

Court of Common Pleas     Fairfield County     File No. 38454

MEMORANDUM FILED APRIL 27, 1940.

*William E. Burton,* and *Shannon & Wilder,* and *David R. Lessler,* of Bridgeport, for the Plaintiff.

*Edward W. McPadden, Samuel Engelman,* of Bridgeport, and *Gray & Gray,* of South Norwalk, for the Defendants.

DEVLIN, J. (Acting.) This is a foreclosure action brought in two counts and defenses of usury, an extension agreement, and failure to file a claim against the estate of one party have been interposed.

In November of 1930 the defendant, Henry D. Russell,

needing money to buy lumber for the repair of some barns on his property, saw an advertisement in a Bridgeport newspaper, inserted by Jacob Miller, to the effect that he loaned money at six per cent on easy terms. At the time Russell owned his own home with about 75 acres of land, and although it was encumbered by a first mortgage to the extent of $8,000, there was still considerable equity in the property. Miller agreed to loan Russell the $1,000 requested but insisted on another co-maker and as a result a note was signed by Henry Russell, his wife Wilhelmina, and Daniel E. Whitlock, in the amount of $1,400 with interest at the rate of six per cent payable semi-annually. Principal payments on the note were to be made in monthly installments of $25. At the same time, defendants Henry and Wilhelmina Russell executed a second mortgage as security and Daniel E. Whitlock gave a first mortgage on his property as additional security. This property, about three acres, had been purchased by him for his home about 1925 for $3,500, had been modernized, and was assessed for $2,500. Both the note and mortgage were made out in the name of Zlate Miller, wife of Jacob, and subsequently assigned to the plaintiff, a corporation operated by him.

On this loan the Russells paid principal in the amount of $1,058.32 and interest of $255.52. The plaintiff on this count is now claiming a balance of $241.62 plus interest from May 16, 1937.

In July of 1932 Russell needed $500 more to purchase cattle and Miller agreed to advance the money. On July 5th another note in the amount of $725 was signed by Wilhelmina Russell and Daniel E. Whitlock and another mortgage executed on the same properties. Cash in the amount of $515 was given to Russell, the additional $15 being explained on the ground that it was in order to comply with the law. At this time the principal on the first note had been reduced so that there was $725 owing. This note and mortgage were taken in the name of Sarah Lubell, daughter of Miller, and subsequently assigned to the plaintiff.

On his count the plaintiff is claiming an unpaid balance of $650 with interest from October 16, 1936.

Subsequent to these transactions and prior to the bringing of the suit on October 21, 1937, Daniel E. Whitlock died and the named defendant, William J. Goss, was appointed administrator. On September 30, 1938, he resigned and Harriet

A. Whitlock was appointed administratrix *d.b.n.* and she was joined as party defendant. The defendants, Pearl Hubbell, Virginia Ready and Mabel Morrow, are children of the deceased Whitlock.

By an amended complaint only the property originally in the name of Daniel E. Whitlock is sought to be foreclosed.

As to the defense of usury on the first count, it appears that when the mortgage was executed, cash in the amount of $1,000 was given to Russell, the other $400 being regarded as a bonus. This of itself cannot be condemned as the payment of a bonus as consideration for the making of a loan is one of the commercial usages of the time. But the question remains, whether or not it was paid by reason of the additional risks involved or the inability to secure a loan on the property, or was used as a shield to avoid the usury statutes.

The property of Russell was encumbered by a first mortgage of $8,000 in favor of the Federal Land Bank. The owner himself placed a value of $25,000 on the property and there is some evidence to the effect that the mortgagee valued it to the extent of $12,000 when the mortgage was taken. It would seem that the security on the basis of this property would fairly suffice, but it being a second mortgage there might be a sound difference of opinion as to the risks involved. The Whitlock property, however, was valued at considerable over the amount of the note and the security here amounted to a first mortgage. Under such a set of facts it is impossible for the court to see where there was any risk involved.

Claim is made by the plaintiff that in the event defendants kept their agreement to pay regularly they would have been entitled to a ten per cent credit of $140 which would make the amount repaid $1,260 with interest. No such clause appears in the note or mortgage and I am inclined to the belief there was no such understanding, especially when resort is had to the manner in which interest payments were made. Principal payments amounting to $275 were made in the first year, yet the interest collected was computed on a basis of six per cent on $1,400 for the entire year.

I am of the opinion that the inclusion of the bonus was a charge for the use of the money loaned in addition to the six per cent interest expressly reserved in the note and I so find.

As to the defense of usury to the second count, it appears

that Russell asked for $500 but when the check was given him it was in the amount of $515. This may be explained on the ground that if the amount loaned had been exactly $500 the exception in the statute would not apply and the situation would be similar to that found in the case of *Kruzansky vs. Scombul*, 113 Conn. 569. The bonus in this case amounted to $210, making the note $725, and the security taken the same as in the former transaction. At the time of this mortgage, July 5, 1932, the indebtedness on the first note had been reduced to $725, so that the element of risk sanctioning this bonus was not present and the transaction amounted to a charge for the use of money loaned in addition to the interest reserved in the note.

The resulting interest rate on both counts exceeded 12 per cent and was in violation of section 4732 of the General Statutes, Revision of 1930.

"The mere fact that the amount of a note exceeds the sum actually loaned by an amount greater than the interest charge sanctioned by the statute, does not conclusively establish an intent to transgress its terms, but the law will tear off any disguise from the transaction and if the purpose is to evade the provisions of the statute the loan will be treated as usurious." *Atlas Realty Corp. vs. House*, 123 Conn. 94, 99. *See, also, DeVito vs. Freberg*, 94 id. 145, 148.

Where there is a voluntary taking or reservation of more than the legal rate of interest it is generally regarded as *per se* usurious and the offense is not condoned by want of intent to violate the law.

"The intent which enters into and is essential to constitute usury is simply the intent to take and reserve more than permitted by law for the loan.... by the weight of authority usurious intent is implied if excessive interest is intentionally taken or reserved.... If the mistake be as to the legal right to require the excessive payment, which is received in good faith, there is nevertheless usury. Ignorance of the law excuses no one, not even an honest money lender." 66 C.J. Usury §§68, 70. *See, also, Atlas Realty Corp. vs. House, supra.*

I am of the opinion, and so find, that both loans were made with the intent to evade the provisions of section 4732.

The defendant, Harriet Whitlock, administratrix, and those defendants claiming to have an interest in the Whitlock prop-

erty, by way of cross complaint, allege that the loan was usurious and that because of the unconscionable and oppressive rate of interest which was required, the mortgage securing it is not a *bona fide* mortgage within the meaning of the statute and that the agreement to pay such a note and mortgage is unlawful and against public policy.

Under section 4737 of the General Statutes, Revision of 1930, *bona fide* mortgages in excess of $500 are excepted from the provisions of the usury statute, and it is the claim of the plaintiff that the rule applied in the case of the usurious note has no application where suit is brought to foreclose the mortgage. This presents the question as to whether you can have a *bona fide* mortgage where the note it is given to secure is found to have been made with the intent to evade the usury statutes.

*Bona fide* when used in connection with section 4737 has been defined to mean "good faith without fraud or deception; that is, good faith and honesty as distinguished from bad faith." *Lowenstein & Sons, Inc. vs. British-American Mfg. Co.*, 7 F. (2d) 51, 53.

The agreement in this case was to loan money at a rate of interest which was prohibited by statute. It was entered into with the intent to evade the provisions of the statute. Section 4735 of the General Statutes, Revision of 1930, provides criminal penalties in case of a violation and section 4736 states that no action shall be brought to recover principal or interest upon any loan prohibited or upon any cause arising from the negotiation of such loan. While the statute does not declare such a transaction void as in the case of a mortgage of personal property (§5095) it is an illegal agreement and contrary to the public policy of the state because its inherent purpose is to violate the law.

"Every contract made for or about any matter or thing which is prohibited and made unlawful by statute is a void contract, though the statute does not mention that it shall be so, but only inflicts a penalty upon the offender." *Sagal vs. Fylar*, 89 Conn. 293, 295. *See, also, DiBiase vs. Garnsey*, 103 id. 21; *Tator vs. Valden*, 124 id. 96.

The agreement for the loan being illegal and unenforceable, the mortgage given as security for its performance stands in no better position. It was executed at the same time, was part of

the same transaction, and was a cause arising from the negotiation of such loan. Such a mortgage does not come within the meaning of *"bona fide"* as required by the statute. On the contrary the mortgage was a usurious one and void.

"A usurious mortgage, which is declared to be void, can no more be enforced for the benefit of the mortgagee, upon his petition to foreclose, than the usurious debt for which the mortgage was given as security, can be collected, by means of a suit at law instituted for that purpose." *Camp vs. Bates*, 11 Conn. 488, 502. *See, also, Cowles vs. Woodruff*, 8 id. 35, 37; *Atlas Realty Corp. vs. House*, 120 id. 661, 666.

The plaintiff here must depend upon the terms of an illegal contract to enforce his right to foreclose and it has been generally held under such a situation that the court will not enforce it, nor will they enforce any alleged right directly springing from such contract. *Tator vs. Valden, supra.*

In view of the finding on this defense no discussion of the other issues raised by the defendants is necessary.

Judgment may be entered in favor of all defendants on both counts of the complaint.

Judgment may be entered for the defendants, Harriet A. Whitlock, individually and as administratrix, Pearl Hubbell, Mable Morrow, and Virginia Ready, on the affirmative matters alleged in their cross complaint, declaring the mortgages and notes null and void.