[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In March of 1983, the plaintiff and defendant went into business (a snack bar) together under the corporation name of R J Enterprises, Inc. Each put approximately CT Page 9804 $8,229.00 of their personal money into the business. After three months of operating the snack bar, the plaintiff and defendant decided to terminate their business relationship. The plaintiff refused to buy the defendant's share of the business. The plaintiff, however, offered to help the defendant obtain money by borrowing from a bank (CBT) to buy the plaintiff's share of the business. The plaintiff personally guaranteed the loan and received the loan amount of $9,000.00 in cash.
As part of the business termination, on June 14, 1983, the corporation's counsel drew up an Agreement whereby the plaintiff agreed to sell his 100 shares of stock in the corporation for $9,000.00. The defendant agreed to make installment payments to Connecticut Bank Trust Company (CBT) on the $9,000.00 note. In accordance with the Agreement, the defendant made three payments to CBT, each payment in the amount of $250.48 for the months of July, August and September, 1983. The business failed financially in September of 1983, and the defendant stopped repaying this loan.
As a cosigner on the note the plaintiff paid $9,326.86 to CBT after the defendant stopped paying, sometime in 1983 or 1984.
The parties had no contact or dealings from July of 1983 through August of 1984 inclusive. In September or October or November of 1984, the defendant saw the plaintiff at a bocce tournament at the Hall of Fame Lounge in Southington, Connecticut. The meeting was coincidental. The defendant spoke to the plaintiff briefly, for a matter of minutes on the day of the tournament. Defendant signed the note in question at this outdoor bocce tournament, on the wooden backboard of the bocce court. The note reads as follows:
$13,718.80 Southington, Connecticut November, 1984
 FOR VALUE RECEIVED, on November ___, 1989, I, ROBERT T. DEZI, of 267 Roxbury Road, New Britain, Connecticut, promise to pay to NICHOLAS J. DeLUCO of 71 Belrose Avenue, Southington, Connecticut, or order, the sum of Thirteen Thousand Seven Hundred Eighteen and 80/100 ($13,718.80) Dollars, without interest if paid according to the tenor of this note, otherwise interest shall accrue at the rate of CT Page 9805 fifteen percent (15%) per annum from the date of this note payable at the residence of said NICHOLAS J. DeLUCO, as aforesaid or at such other place as the holder hereof may designate in writing, together with all costs of collection, including reasonable attorney's fees incurred in any action brought to collect this note.
 Presentment, notice of dishonor and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their heirs, personal representatives, successors and assigns.
 The maker hereof reserves the right to anticipate any or all of said final installments before any of the same become due and payable.
/s/ Robert T. Dezi
The defendant, adamantly denies that he signed the note or promised to pay the plaintiff any money at the bocce tournament, or at any time or at any place prior to September or thereafter. The defendant testified at trial that he would never sign anything without the benefit of counsel, especially a note for the repayment of such a sum of money, at a brief encounter at a public bocce tournament. The defendant did not have any face-to-face contact with the plaintiff from September of 1984 until the time of this trial. The plaintiff, however, made a few phone calls to the defendant at some times between the date the plaintiff signed the note to the present to demand the defendant repay the business investment.
On or about August 14, 1990, F., an attorney for the plaintiff at the time, made demand on the defendant for $13,718.80 plus interest at the rate of 15% per annum. The 15% interest set out on the face of the note represents interest the plaintiff intends to collect retroactive to November, 1984; the sum $13,718.80 set out on the face of the note represents principal of about $9,000.00, plus interest at 13.99%. The note was drafted by F. on behalf of the plaintiff, but the note was not executed by or in the presence of F. The components of this note, according to the plaintiff, include the CT Page 9806 $9,326.86 which the plaintiff paid CBT, approximately $4,400.00 of interest (at 13.99%) which plaintiff estimates CBT would have collected from the defendant had the defendant paid the original business loan, and then a 15% interest component charge already built into the principal amount of the note.
The plaintiff testified he picked up the note, unexecuted, from F. in November of 1984, and that he kept the note in the glove compartment of his car for a number of months. At sometime prior to August 14, 1990, the plaintiff returned said note to F. with a signature affixed to it which is the defendant's signature. The defendant claims this signature is a forgery.
On August 9, 1991, the plaintiff, through his present sent attorney, brought a complaint against the defendant and demanded payment of $13,718.80, plus interest of $22,147.98, for a total of $35,866.78. Subsequently, on November 21, 1991, the plaintiff through his present attorney filed an Amended Complaint in which the plaintiff demands $13,718.80, plus interest of $18,369.22, for a total of $32,088.02.
It is the plaintiff's intent, as evidenced by the foregoing demands and complaints, to collect interest in excess of 12% on the alleged principal debt of approximately $9,000.00 which the defendant paid CBT.
It is well settled law that in a civil action the general burden of proof rests on the plaintiff. Hally v. Hospital of St. Raphael, 162 Conn. 352, 358, 294 A.2d 305, 309
(1972). The plaintiff does not prevail by reason of the weakness of the defendant's case. Silva v. city of Hartford,141 Conn. 126, 128, 104 A.2d 210, 211 (1954).
Under Conn. Gen. Stat. 42a-3-308, which is a restatement of Conn. Gen. Stat. 42a-3-307, the plaintiff has the burden of proving that the signature is valid. In pertinent part, 42a-3-308 (a) states: "If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless . . .". In this case, there is no question under our law, the burden of establishing the signature by a preponderance of the total evidence is on the plaintiff. CT Page 9807
The defendant specially plead the defense of forgery, put the plaintiff on notice of his intent to contest the validity of the signature, and introduced evidence sufficient to put the authenticity of the signature into question. The defendant introduced into evidence the report of a handwriting expert. After examination of known signatures of the defendant, the expert affirmed her original findings with even more certainty and stated unequivocally that the signature on the note was not written by the defendant. In addition to her technical findings, she noted that the signature on the note was very smoothly executed and determined that it could not have been written on a rough wooden surface as a witness at this trial, a Mr. Landrette claims, and as the plaintiff had originally claimed.
The defendant testified unequivocally that he did not sign the note. To corroborate his testimony, the defendant introduced a newspaper article showing that a bocce tournament at the Hall of Fame Lounge was held on September 22nd and 23rd of 1984, and claimed that he could not have possibly signed a note that was allegedly executed in November 1984. The plaintiff has admitted in response to the defendant's Request for Admissions that the subject note was executed in November 1984. The plaintiff's rebuttal witness testified that the Connecticut Open Bocce Tournaments are held in September or October, not November.
The note on its face is dated November. The defendant claims the evidence, however, shows that the brief encounter at the Bocce Tournament occurred some time in September. The coincidental encounter at the Bocce Tournament was brief and unexpected.
The defendant has introduced the aforementioned evidence designed to cast doubts about the authenticity of the signature in question. Under 42a-3-308(a) of the Connecticut General statutes the burden of establishing the signature by a preponderance of the total evidence is now on the plaintiff. The plaintiff testified that the defendant signed the note. The witness, Mr. Landrette, testified he saw the defendant sign a paper at the bocce contest. The report of the plaintiff's expert is that the signature on the note is the signature of the defendant. It should be noted that neither the plaintiff's nor the defendant's experts testified in person at CT Page 9808 the trial. Their reports are in evidence by agreement of the parties.
The court finds that the plaintiff has met his burden of proof of establishing the signature of the defendant on the note by a preponderance of the evidence.
Our law prohibits any person, firm, corporation or agent thereof from loaning money, directly or indirectly to any person and directly or indirectly charging, demanding, accepting or making any agreement to receive therefor interest at a rate greater than twelve per cent per annum. Conn. Gen. Stat. 37-4. Connecticut denies any recovery whatsoever on a usurious loan.
"The law will tear off any disguise from the transaction and if the purpose is to evade the provisions of the statute, the loan will be treated as usurious." Atlas Realty v. House, 123 Conn. 94, 99 (1937). See Douglass v. Boulevard Co., 91, Conn. 601, 604 (1917). This means that even if the loan agreement is not usurious on its face, courts will find it violates the statutes if the underlying transaction was usurious in its inception. A prime example is the holding in In re Feldman, 259 F. Sup. 218 (D. Conn. 1966). In Feldman, the $25,500.00 note at twelve per cent (12%) per annum was not, on its face, usurious. Id. at 219. However, a $300.00 "commitment fee" had been deducted from the proceeds of the loan. Id. The court found that the fee coupled with the 12 per cent interest charged tainted the transaction with usury. Id. at 221. The note signed by Mr. Dezi demands a payment of $13,718.80, yet the alleged original debt was only $9,326.86 according to the plaintiff's testimony. The plaintiff, Mr. DeLuco, testified at trial that the difference represented the interest (13.99%) which Mr. Dezi would have paid CBT if he had not defaulted. No one actually paid this anticipated interest of approximately $4,400.00 since the plaintiff, Mr. DeLuco, prepaid the loan. It is not conceivable that this $4,400.00 is anything other than an additional interest charge to the interest expressly reserved in the note.
The mere fact that the amount of a note exceeds the sum actually loaned is not, in and of itself, evidence of usury. Without any explanation of the difference between the face amount of the note and the amount actually loaned, however, ever, a trial court is justified in finding that the note is CT Page 9809 usurious. Bochicchio v. Petrocelli, 126 Conn. 336, 339 (1940) (loan was for $1,500.00 and note was for $1,650.00 at 6% interest). It is lawful to charge a bonus as consideration of the risk involved or some other circumstance, but not as a charge for the use of the money loaned in addition to the interest expressly reserved in the note. Atlas Realty v. House,123 Conn. 94, 99 (1937). The plaintiff, Mr. DeLuco, has admitted that the difference between the $9,326.86 paid to CBT and the $13,718.80 on the face of the note represented interest which never matured and which was never paid. The plaintiff, Mr. DeLuco, did not pay this $4,400.00, it is simply a bonus which plaintiff gratuitously added in above the $9,326.86 which he lost.
The Connecticut Supreme Court calculates the interest rate at the highest rate permitted on the amount actually loaned, in determining whether that rate violates the statute. Manchester Realty v. Kanehl, 130 Conn. 552 (1944) (plaintiff loaned $800.00, but charged $120.00 as a bonus). In other words, even where there is no provision for partial payments, a "bonus" or extra charge factored into the face value of the note must be spread over the term of the loan. Id. A note does not necessarily constitute a separate and distinct obligation given by way of collateral security for the underlying loan. Progressive Welfare Assoc. v. Morduchay, 7 Conn. Sup. 424,426 (1939). Consequently, "it is no import whether the illegal rate is explicit on the face of the note or included in its face value." Greglon Industries v. Bowman, 21 Conn. App. 131,135, 572 A.2d 366 (1990). In Greglon Industries v. Bowman, 21 Conn. App. 131 at 134, 135, the court said:
 Connecticut's usury statutes provide a particularly severe penalty. Stelco Industries, Inc. v. Zander, 3 Conn. App. 306, 308-309, 487 A.2d 574 (1985); see also Scientific Products v. Cyto Medical Laboratory, 457 F. Sup. 1373, 1377-78
(D. Conn. 1978). Under General Statutes 37-8, a lender who loans money at an illegal rate of interest is barred from recovering both interest and principal. Because of the penal nature of this forfeiture, the statute has been strictly construed; see Stelco Industries, Inc. v. Zander, supra, 309 (usury statutes do not apply to sale CT Page 9810 of goods on credit); and our cases have made the issue of the lender's intent a relevant inquiry. "[A] lender can evade the usury bar by showing that he had no intent to extract more than the lawful rate of interest." Maresca v. DeMatteo, 6 Conn. App. 691, 696, 506 A.2d 1096 (1986).
 The relevance of intent in transactions involving usurious noninterest-bearing notes, where the illegal interest is embedded in the face amount of the note, is well-settled. A showing of lack of intent has been considered in various lending arrangements otherwise violative of 37-5, including notes with no stated rate of interest; see, e.g., Wesley v. DeFonce Contracting Corporation, 153 Conn. 400, 405-406, 216 A.2d 811 (1966); Atlas Realty Corporation v. House, 123 Conn. 94, 100-102, 192 A. 564 (1937); notes in which the stated interest is at or below the legal rate; see, e.g., Bochicchio v. Petrocelli, 126 Conn. 336, 339, 11 A.2d 356 (1940); Mutual Protective Corporation v. Palatnick, 118 Conn. 1, 4-5, 169 A. 917
(1934); and notes that include payments characterized by the lender as something other than interest. See, e.g., Community Credit Union, Inc. v. Connors, 141 Conn. 301, 307, 105 A.2d 772 (1954) (interest described as a fine); Douglass v. Boulevard Co., 91 Conn. 601, 604-605, 100 A. 1067 (1917) (interest described as a commission).
 The defendants argue that this line of cases does not extend to violations under 37-4. They claim that because 37-4
applies to notes that are clear and unambiguous on their faces, the lender's intent in these circumstances is irrelevant. We are not persuaded.
Section 37-4 is a blanket prohibition CT Page 9811 against lending money at a rate in excess of 12 percent. Section 37-5 prohibits a lender from circumventing the 37-4 interest cap by accepting either a noninterest-bearing note or a low interest-bearing note whose actual rate of interest is greater than 12 percent. These statutes read together, therefore, operate to prohibit usurious loans no matter what their form. Under our usury laws, it is of no import whether the illegal rate is explicit on the face of the note or included in its face value.
A court should not stop its inquiry after an examination of a facially nonusurious note, but negate the contract underlying the note, as "it does not stop short when a single head of the Cerberus is lopped off. It is satisfied only by the extinction of life." Progressive Welfare Assoc. v. Morduchay, 7 Conn. Sup. at 426. This principle it would seem governs the duty of the court here to disallow the plaintiff's recovery under the Second Count of his complaint. The plaintiff may not recover that which is denied him because he seeks or attempts to seek a usurious interest.
Even if the court would allow the plaintiff to collect an amended amount of interest calculated at 12 per cent (instead of 15%) compounded, under this reasoning, the additional $4,400.00 sum which the plaintiff factored into the principal amount of the original debt would yield an unlawful rate of interest. The fact that a note exceeds the amount loaned is evidential, but not conclusive of an intent to evade the usury statutes. Contino v. Turello, 101 Conn. 555, 558
(1924). The existence of such an intent is a question for the trier of fact. Douglass v. Boulevard Co., 92 Conn. 601, 604
(1917); Community Credit Union v. Connors, 141 Conn. 301,105 A.2d 772, 775 (1954). The plaintiff relies on Mutual Protective Corp. v. Palatnick, 118 Conn. 1 in support of his alleged lack of unlawful intent. A reading of the case, however, reveals that it stands only for the simple proposition that "the plaintiff is entitled to make the attempt to sustain, as an issue of fact, its [the plaintiff in that case] averments of lawful intent." Id. at 5. In Palatnick, it is further stated that any "proffered explanation will be cautiously and carefully weighed and the instances will be rare where it can CT Page 9812 avail to negative such intent."
The plaintiff, Mr. DeLuco, maintains that he never intended to violate the law. The fact is that he intended to collect CBT's rate of interest (13.99%) which was never paid, plus the 15% stated in the note signed by the defendant. It is not necessary to show an intent to violate the law, because the lender is thought to intend to do what he does. Atlas Realty v. House, 94,100, (1937). The plaintiff maintains that his lawyer, rather than himself, inserted the illegal rate of interest and that he, as a layman, was unaware that he could not charge the interest rate that a bank could charge. Ignorance of usury law is no excuse. see Atlas Realty v. House, supra; and see Bridgeport Mortgage and Realty Corp. v. Whitlock, 8 Conn. Sup. 241, 244 (1940), rev'd on other grounds, 128 Conn. 57 (1941).
There are Connecticut cases in which the court found a lack of an intent to evade the usury statutes despite the existence of notes that were usurious on their face. These, however, in their fact patterns, are totally distinguishable from the instant case. In DeVito v. Freberg, 94 Conn. 145,108 A. 547 (1919), the only suggestion of an usurious "bonus" was from the borrower, and, in fact, the lender initially refused such a premium and accepted the "bonus" only after the insistence of the borrower. Id. at 147. The court found further, that although the lender was absolved of unlawful intent, "this in no sense loses sight of the fact that cases may be frequent where the circumstances surrounding the taking of such a note point so irresistibly to a concealed corrupt motive as to demand the inference of an accompanying intent to evade the statute." Id. at 148. In the instant case the plaintiff, Mr. DeLuco, knew full well that he only paid $9,326.86 to CBT, but chose to make the face amount of the note $13,718.80, which included a sum of approximately $4,400.00 which no one ever paid or received, not to mention the 15% stated interest on the note.
The plaintiff relies on a second case, Greglon Industries v. Bowman, 21 Conn. App. 131, 572 A.2d 369 (1990), in which the Connecticut Appellate Court failed to find an unlawful intent to evade the usury statutes. In Greglon, the plaintiff advanced $50,000.00 to the defendant evidenced by a note, prepared by a third party who was not instructed as to the interest rate, stating an interest rate of 18 per cent per CT Page 9813 annum. Id. at 133. Shortly after the due date, the defendant wrote a check for $50,000.00 which the plaintiff would have accepted as full payment if the defendant had not stopped payment on the check. Id. The court held that the plaintiff lacked any intent to collect the interest. Id. at 137, Id. at 372. Greglon differs factually from the present case in two important ways. Firstly, there is no indication the plaintiff, Mr. DeLuco, would have been satisfied with payment of the amount loaned, $9,326.86. Secondly, Mr. DeLuco admits to the fact that he instructed his attorney to charge Mr. Dezi with the uncollected interest which CBT would have received, namely 13.99 per cent.
A third case in which the court failed to find the requisite unlawful intent was Wesley v. DeFonce Contracting,153 Conn. 400, 216 A.2d 811 (1966). In Wesley, the plaintiff borrower coerced an elderly lady to loan him money without the aid of legal advice, and actually prepared the promissory notes and checks, structuring the transaction in such a way as to result in a usurious loan. The court noted in its opinion that "this was not the ordinary commercial transaction." Id. at 406. In Golden v. Lyons, 151 Conn. 21 (1963), a case more like the one before us, the Connecticut Supreme Court held that a $20,000.00 note given in consideration of an antecedent debt of $13,970.00 which, without expressly reserving interest as such, provided for a schedule of payments requiring the maker to pay the equivalent of 12 per cent per annum on the face amount of the note was usurious on it's face. Id. at 23-4. Like the plaintiff here, the plaintiff in Golden maintained that he never intended to exact payments of interest exceeding 10 per cent. Id. at 24. But the court observed that the plaintiff in, Golden, like the plaintiff here actually demanded payments in accordance with the apparently usurious schedule required under the note which, left unexplained, constituted a violation of 37-4. Id. at 26. In Contino v. Turello, 101 Conn. 555, 126 A. 725 (1924), the plaintiff, "rather ignorant, unaccustomed to business matters of this kind, and had not loaned money before," did not draft the note in question. Id. at 556. Upon presentation of the note for $6,000.00, he even inquired why it was for $1,000.00 more than the amount loaned, because he intended only to $5,000.00. Id. The Connecticut Supreme Court held that "when the plaintiff payee made demand of this endorser for the face of this note, he was demanding the usurious interest which is prohibited by these statutes, and he cannot maintain an action upon such demand." CT Page 9814 Id. at 561. Likewise, the plaintiff, Mr. DeLuco, should not be able to disclaim his stated original intention to collect the bank's interest on the amount loaned, and add to it interest at 15% as stated in the original note or even 12 per cent compounded as stated in the complaint, because he demanded the usurious interest of the defendant, Mr. Dezi.
Mr. DeLuco maintains that the substitution of a complaint, aimed at collecting a nonusurious rate of interest, as was the case in Wesley v. DeFonce Contracting, supra, purges him of any intent to evade the usury statutes. The case at hand is distinguishable. The plaintiff here, Mr. DeLuco, knew that the face value of the note was different from the actual principal amount in question ($9,326.86). The trial record here reveals the conscious intent on the part of the plaintiff, Mr. DeLuco, to collect the note's 15% interest on top of the added interest already built into the principal amount. In the case, In re Feldman, 259 F. Sup. 218 (D. Conn. 1966), the plaintiff tried to modify a payment agreement bt by reducing the interest rate from 12 to 10 per cent, but the count refused to consider the taint of usury cured by the subsequent transaction. Id. at 222. In Atlas Realty v. House, 123 Conn. 94,192 A. 564 (1937), at a second trial, the plaintiff realized that the incorporation of a "bonus" in the principal debt would result in a demand to collect an unlawful rate of interest and consequently offered if payment of such claim should result in payment of an interest rate greater than that allowed by law, to reduce its claim by such amount. Id. at 97. The court held that "the voluntary taking or reservation of more than the legal rate of interest is per se usurious and the offense is not condoned by want of intent to violate the law." Id. at 100.
The plaintiff, Mr. DeLuco, is attempting to recover the $9,326.86 principal which he lost. He adds in all the interest which Mr. Dezi would have paid to CBT had he paid off the business debt over the five year term; then he adds the second interest component of 15% as stated in the note. The demand letters in evidence and the original complaint demonstrate the plaintiff's unequivocal intent to collect an illegal sum of interest beyond the original amount which he lost. With respect to damages on defendant's counterclaim, this court is not able, on the facts found, to hold the plaintiff liable for treble damages pursuant to 52-568(a)(2) of the Connecticut General statutes for commencing and prosecuting CT Page 9815 this action without probable cause, and with a malicious intent unjustly to vex and trouble the defendant. This court is not able, on the facts found, herein, to hold the plaintiff liable for double damages pursuant to 52-568(a)(1) of the Connecticut General statutes for commencing and prosecuting this action without probable cause.
Additionally, the court, on the basis of the evidence presented, is unable to find that the plaintiff placed harassing phone calls and sent baseless demand letters to the defendant. The court is unable, as well, to find that over the course of many months, the defendant and his family have suffered anxiety and humiliation, or that they have been forced to spend substantial sums of money to defend this. The court is unable, as well, to find that the defendant has lost time from work and has suffered damages.
The defendant has sustained the burden of proof as to the Third Special Defense (usuary) to the First Count of plaintiff's Complaint.
The defendant has sustained the burden of proof as to the First Special Defense to the Second Count.
Judgment on the amended Complaint may enter for the defendant.
Judgment on the Counterclaim may enter for the plaintiff.
Judgment on the Counterclaim may enter for the plaintiff.
LEONARD W. DORSEY STATE TRIAL REFEREE